**23-2198**

# United States Court of Appeals for the Federal Circuit

SFERRA FINE LINENS, LLC,
Appellant,

v.

SFERA JOVEN S.A.
Appellee

Appeal from the Trademark Trial and Appeal Board
in Opposition No. 91226943
United States Patent and Trademark Office,
Administrative Trademark Judge Adlin

## BRIEF OF APPELLEE SFERA JOVEN S.A.

Samuel F. Pamias, Esq.
Aileen E. Vázquez, Esq.
HOGLUND & PAMIAS, P.S.C.
256 Eleanor Roosevelt
San Juan, Puerto Rico 00918
Tel. (787) 772-9834
Fax. (787) 772-9533
samuel@hhoglund.com
aileen@hhoglund.com

*Counsels for Appellee Sfera Joven S.A*

March 15, 2024

# CERTIFICATE OF INTEREST

*(Disclosure Statement)*

Pursuant to Fed. R. App. P. 26.1, Fed. Cir. R. 28(a)(1) and Fed. Cir. R. 47.4(b), counsels of record for Appellee, Sfera Joven S.A. certify as follows:

**1.** The full name of every party represented by our firm is: **Sfera Joven, S.A.**

**2.** The name of the real party in interest represented by our firm is: **El Corte Inglés, S.A.**

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by our firm are: **El Corte Inglés, S.A.**

4. The names of all law firms and the partners or associates that appeared for the parties represented by us in the trial court or agency, or are expected to appear in this Court, and who have not or will not enter an appearance in this case are: **None.**

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal: **None.**

6. Organizational Victims and Bankruptcy Cases. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in

criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6): **N/A.**

Dated: March 15, 2024

*/s/ Samuel F. Pamias*
Samuel F. Pamias

*/s/ Aileen E. Vázquez*
Aileen E. Vázquez

*Counsels for Appellee*
*Sfera Joven S.A.*

# TABLE OF CONTENTS

***Contents*** ***Pages***


| | | |
|---|---|---|
| I. | Table of Authorities | 5-8 |
| II. | Statement of Related Cases | 9 |
| III. | Statement of the Issues Presented for Review | 10 |
| IV. | Statement of the Case and Facts | 11-13 |
| V. | Summary of the Argument | 14-15 |
| VI. | Argument | 16-48 |
| VII. | Conclusion and Relief Sought | 49 |
| VIII. | Certificate of Compliance | 50 |
| XI. | Certificate of Service | 51 |

## I. TABLE OF AUTHORITIES

***CASES*** **Pages**


| | |
|---|---|
| 1. Am. Lebanese Syrian Associated Charities Inc. v. Child Health Research Inst., 101 USPQ2d 1022 (TTAB 2011) | 23, 38 |
| 2. American University v. American University of Kwait, 9204970 2020 WL 919246 (T.T.A.B. 2020) | 34 |
| 3. Bose Corp. v. QSC Audio Prods, Inc., 293 F.3d 1367 (Fed. Circ. 2022) | 45, 46, 47 |
| 4. Cai v. Diamond Hong, Inc., 901 F.3d 1367, 127 USPQ2d 1797 (Fed. Cir. 2018) | 23 |
| 5. CBS, Inc. v. Morrow, 708 F.2d 1579, 1581, 218 USPQ 198 (Fed.Cir.1983) | 17, 18 |
| 6. Cent. Garden & Pet Co. v. Doskocil Mfg. Co., 108 USPQ2d 1134 (TTAB 2013) | 26 |
| 7. Coach Servs. Inc. v. Triumph Learning LLC, 101 USPQ2d at 1722 | 29 |
| 8. Coca-Cola Co. v. Clay, 51 C.C.P.A. 777, 324 F.2d 198, 139 U.S.P.Q. 308 (1963) | 18, 21 |
| 9. Cunningham v. Laser Golf Corp., 222 F.3d 943 (Fed. Cir. 2000) | 16, 49 |
| 10. Custom Vehicles, Inc. v. Forest River, Inc., 476 F.3d 481, 81 U.S.P.Q.2d 1753 (7th Cir. 2007) | 27 |
| 11. Double J of Broward Inc. v. Skalony Sportswear GmbH, 21 USPQ2d 1609 (TTAB 1991) | 22 |
| 12. Edwards Lifesciences Corp. v. VigiLanz Corp., 94 USPQ2d 1399 (TTAB 2010) | 30 |
| 13. Enzo Biochem, Inc. v. Gen-Probe Inc., 424 F.3d 1276 | 23 |
| 14. Genesco Inc. and Genesco Brands Inc. v. Gregory Martz, 66 U.S.P.Q.2d 1260 (T.T.A.B. 2003) | 41 |

| | |
|---|---|
| 15. Hewlett-Packard Co. v. Packard Press, Inc., 281 F.3d 1261 (Fed. Cir. 2002) | 31, 32 |
| 16. In re I.AM.Symbolic, LLC, 866 F.3d 1315 (Fed. Cir. 2017) | 40, 41 |
| 17. In re Bayer Aktiengesellschaft, 488 F.3d 960 (Fed. Cir. 2007) | 16, 35, 36 |
| 18. In re C. H. Hanson Co., 116 U.S.P.Q.2d 1351 (T.T.AB. 2015) | 30, 31 |
| 19. In re Gartside, 203 F.3d at 1312, 53 USPQ2d at 1773 (quoting Consolidated Edison, 305 U.S. at 229–30, 59 S.Ct. 206) | 25, 26, 27 |
| 20. In re E.I. duPont DeNemours & Co., 476 F.2d 1357 (CCPA 1973) | 13, 14, 16, 17 |
| 21. In re Jump Designs, LLC, 80 USPQ2d 1370 (TTAB 2006) | 23 |
| 22. In re King Koil Licensing Co., Inc., 79 U.S.P.Q.2d 1048 (T.T.A.B 2006) | 37 |
| 23. In re Melanie Hart, 77909807, 2013 WL 3001432 (T.T.A.B 2013) | 34 |
| 24. In re Smith and Mehaffey, 31 USPQ2d 1531 (TTAB 1994) | 41 |
| 25. In re Tea & Sympathy, Inc., 88 USPQ2d 1062 (TTAB 2008) | 37 |
| 26. In re Telechat Network, Inc., 76535248, 2006 WL 1404223 (T.T.A.B 2006) | 34 |
| 27. In re the New York Times Co., 90106071, 2023 WL 2729414 (T.T.A.B. 2023) | 36, 37 |
| 28. In re The Newbridge Cutlery Co., 776 F.3d 854 (Fed. Cir. 2015) | 36 |
| 29. In re Trackmobile, 15 USPQ2d 1152 (TTAB 1990) | 30 |
| 30. In re Viterra Inc., 671 F.3d 1358 (Fed. Cir. 2012) | 16, 23 |
| 31. Industria De Diseño Textil, S.A. (Inditex, S.A.), 91245732, 2023 WL 6996329 (T.T.A.B. 2023) | 34 |

32. L. J. Mueller Furnace Co. v. United Conditioning Corp., 42 C.C.P.A. 932, 222 F.2d 755, 106 U.S.P.Q. 112 (1955) 18, 21

33. Octocom Sys., Inc. v. Houston Computer Servs. Inc., 918 F.2d 937, 16 USPQ2d 1783 (Fed. Cir. 1990) 29, 40

34. Omaha Steaks Intl., Inc. v. Greater Omaha Packing Co., Inc., 908 F.3d 1315 (Fed. Cir. 2018) 44, 45, 46, 47

35. On-Line Careline, Inc. v. Am. Online, Inc., 229 F.3d 1080, 1085–86 (Fed. Cir. 2000) 25, 27, 33

36. Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 1371 (Fed. Cir. 2005). 16

37. Paris Glove of Can. Ltd. v. SBC/Sporto Corp., 84 USPQ2d at 1858-59 (TTAB 2007) 24

38. Philip Morris, Inc. v. Imperial Tobacco Co. (of Great Britain and Ireland), Limited, 251 F. Supp. 362, 378, 148 U.S.P.Q. 255 (E.D. Va. 1965) decision supplemented, 282 F. Supp. 931, 156 U.S.P.Q. 239 (E.D. Va. 1967), judgment aff'd, 401 F.2d 179, 158 U.S.P.Q. 561 (4th Cir. 1968) amended on denial of reh'g, 159 U.S.P.Q. 257, 1968 WL 162039 (4th Cir. 1968) 27

39. Recot, Inc. v. Beneton, 214 F.3d 1322, 54 USPQ2d 1894 (Fed. Cir. 2000) 21

40. Safer, Inc. v. Oms Investments, Inc., 94 U.S.P.Q.2d 1031 (T.T.A.B. 2010) 22, 24, 26, 41

41. StonCor Grp., Inc. v. Specialty Coatings, Inc., 759 F.3d 1327, (Fed. Cir. 2014) 17

42. Stone Lion Capital Partners, L.P. v. Lion Capital LLP, 746 F.3d 1317 (Fed. Cir. 2014) 40

43. Thermascan, Inc. v. Thermoscan, Inc., 295 F. 3d 623 (6th Cir. 2002) 18, 20, 21

44. Tiffany and Company v. Costco Wholesale Corporation, 971 F.3d 74 (2d Cir. 2020) 43

45. U. of S. California, 2008 WL 3333839 (T.T.A.B. 2008) 33, 34

***STATUTES***

46. Trademark Act Section 44(e) 11

47. Trademark Act Section 2(d), Section 2(d) of the Lanham Act, 15 U.S.C.A §1052(d) 10, 11, 12, 15, 17, 18, 34

48. TMEP §704.02 11

49. Section 32 of the Lanham Act, 15 U.S.C.A §1114 12

50. Section 43(c) of the Lanham Act, 15 U.S.C.A §1125(c) 12

***OTHER AUTHORITIES***

51. Hilliard, Welch II, Marvel, Trademarks and Unfair Competition (Lexis Nexis; Matthew Bender: San Francisco, 2007), pg. 129. 18, 21

52. §16:9. Prior and continuous usage is required, 2 McCarthy on Trademarks and Unfair Competition § 16:9 (5th ed.) 27

## II. STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. R. 28(a)(4) and Fed. Cir. R. 47.5, counsels of record for Appellee, Sfera Joven S.A. certify as follows:

1. There has not been any other appeal previously before this or any other appellate court that resulted from same proceeding [Opposition No. 91226943] before the Trademark Trial and Appeal Board that is currently being reviewed by this Court on this Appeal.

2. There is no pending cases in this or any other tribunal that will directly affect or be directly affected by this court's decision in the pending case.

Dated: March 15, 2024

/s/ Samuel F. Pamias
Samuel F. Pamias

/s/ Aileen E. Vázquez
Aileen E. Vázquez

*Counsels for Appellee*
*Sfera Joven S.A.*

## III. STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the Trademark Trial and Appeal Board ("Board") applied the proper legal test to determine whether a likelihood of confusion exists under 15 U.S.C.A. §1052(d).

2. Whether the evidence made of record supports the Board's decision that no likelihood of confusion exists as a matter of law.

## IV. STATEMENT OF THE CASE AND FACTS

On December 12, 2014, Applicant/Appellee SFERA JOVEN S.A. ("Appellee") filed U.S. Trademark Application Serial No. 86/478809 for the design mark ( Sfera ) to identify: "Perfumery, namely, perfume, toilet water, scented water, cologne, essential oils for personal use, cosmetics, namely, body, face and skin moisturizing creams, lotions and tonics" in **International Class 003**; "Leather handbags, imitation leather sold in bulk; umbrellas, parasols, walking sticks, whips and harness; billfolds and wallets made of leather" in **International Class 018**; and "Clothing, namely, suits, coats, raincoats, pants, dresses, shirts, sweaters, stocking, scarves, shoes, slippers, boots; gloves and hats" **International Class 025**. The subject Application was filed by Appellee pursuant to Trademark Act Section 44(e), based on foreign registration number 4563541 issued by the EUROPEAN (EU) OFFICE FOR HARMONIZATION IN THE INTERNAL MARKET (OHIM), which is currently active and has an expiration date as of July 27, 2025.

On March 25, 2015, the United States Patent and Trademark Office ("USPTO") issued an Office Action wherein determined, among other things, that "[t]he trademark examining attorney has searched the Office's database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d). TMEP §704.02; *see* 15 U.S.C. §1052(d)." The issues raised in the Office Action pertaining to the foreign registration were resolved

in a Response to Office Action on September 3, 2015. As a result, on October 21, 2015, the USPTO issued the Notice of Publication for the trademark, and the mark was eventually published on November 10, 2015.

On March 9, 2016, Opposer/Appellant SFERRA FINE LINENS, LLC ("Appellant"), filed its Notice of Opposition alleging that Applicant's trademark is confusingly similar to the marks in U.S. Registration Nos. 3205168 and 3012913 for SFERRA and SFERRA BROS., respectively. In essence, Appellant claimed alleged likelihood of confusion and dilution pursuant to Sections 2(d), 32 and 43(c) of the Lanham Act (15 U.S.C. §§ 1052(d), 1114 and 1125(c), *respectively*).

The evidence of record supports Appellee's contentions that the marks at issue create different overall commercial impressions, that the goods are different, that they both have different channels of trade and prospective customers, that no likelihood of confusion exists between them; therefore, they can coexist. Moreover, the evidence proffered by Appellant does not establish in any way that Appellee's mark is likely to cause confusion with Appellant's cited, registered marks. Likewise, Appellant's proffered evidence does not support that its marks are famous, much less that they became famous before the filing of Appellee's Mark in U.S. Trademark Application Serial No. 86/478809.

On May 18, 2023, the Board issued its Final Decision dismissing the Opposition. Appellant's dilution claim was dismissed as "waived" because of its

failure to pursue it and Appellant is not seeking review of such determination. Therefore, the primary issue Appellant is seeking review of is the Board's determination that no likelihood of confusion exists between the parties' marks. In reaching its conclusion, the Board properly analyzed all probative evidence made of record based on the *In re E.I. duPont* case and others. The Board held that although the marks are similar and Appellant's pleaded mark enjoys some commercial strength, Appellant did no show that the goods are related, or that they travel in the same channels of trade to the same classes of consumers, and that failure was dispositive. (Appx17). As the Board correctly stated, since the goods are not related, confusion is unlikely notwithstanding that the marks are similar.

## V. SUMMARY OF THE ARGUMENT

Appellant asserts the Board legally erred in its application of the *duPont* factors. However, the Board's decision to rely on dissimilarity of the parties' goods, channels of trade and customers alone is supported by the case law and is not erroneous.

Even though the Board found that some of the duPont factors favored Appellant, a review of the material facts of record demonstrates the evidence presented by Appellant supports a finding of no confusion. Appellant's marks, as pleaded, are not confusingly similar to Appellee's. No material facts prove Appellant's marks are strong. There is no evidence of actual confusion. No material evidence shows Appellant's and Appellee's products overlap. Substantial evidence supports that the goods identified in Appellee's Application and Opposer's cited registrations are neither similar nor related, and the parties' goods have different channels of trade and target different consumers.

Appellant failed to provide evidence sufficient, adequate, reliable and/or admissible evidence to establish that the purchasing public would mistakenly assume that Appellee's identified goods originate with, are sponsored by, or are in some way associated with the goods identified in Appellant's cited registrations or trademarks. This is critical to a finding of likelihood of confusion under the correct legal standard: the "related goods test".

In reaching its conclusion that the parties' goods and their channels of trade and consumers do not overlap, the Board applied the "related goods test" to the evidence submitted by Appellant and thoroughly explained how the evidence was insufficient and "of no help to Opposer. Appellant failed to meet its burden of proof before the Board below. The Board made a number of factual findings in reaching its determination that no likelihood of confusion exists, and those were and are each supported by substantial evidence. Even construing all material facts for Appellant, the substantial evidence supports dismissal of Appellant's claim under Section 2(d). Therefore, the Board's decision should be affirmed.

# VI. ARGUMENT

## a. Standard of Review

Likelihood of confusion is a legal determination based on underlying factual findings. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000). The Opposer bears the burden of proving its claim of likelihood of confusion by a preponderance of the evidence. *Id*, at 950. In an appeal from Trademark Trial and Appeal Board in an opposition proceeding, the Federal Circuit reviews the factual findings of the Board--in particular, its factual findings regarding each of the *DuPont* factors--for substantial evidence. *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371 (Fed. Cir. 2005). “Substantial evidence” is “such relevant evidence as a reasonable mind would accept as adequate to support a conclusion.” *In re Viterra Inc.*, 671 F.3d 1358, 1361 (Fed. Cir. 2012) (internal quotation marks omitted); *accord Palm Bay Impts.,* 396 F.3d at 1371 (“Evidence is substantial if a reasonable person might find that the evidentiary record supports the agency's conclusion”) (internal quotation marks omitted). “Where two different conclusions may be warranted based on the evidence of record, the Board's decision to favor one conclusion over the other is the type of decision that must be sustained by this court as supported by substantial evidence.” *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007). The Board's legal conclusions--including its weighing and balancing of the *DuPont* factors in the

course of arriving at its determination of whether likelihood of confusion is present--are reviewed *de novo*. *StonCor Grp., Inc. v. Specialty Coatings, Inc.*, 759 F.3d 1327, 1331 (Fed. Cir. 2014).

### b. The Board Properly Relied on the Correct Legal Standard when Applying the *duPont* Factors.

Appellant argues the Board committed at least five errors in analyzing the factors set forth in *In re E.I. duPont DeNemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973), as applied to the alleged overlap between the parties' marks, which claims that contributed to its finding that confusion in this case is unlikely. The Board's methodology, however, is endorsed by the Federal Circuit and is not legal error.

#### a. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT THE PARTIES' GOODS ARE NEITHER IDENTICAL NOR RELATED, THEY HAVE DIFFERENT CHANNELS OF TRADE AND PROSPECTIVE CUSTOMERS. THEREFORE, THERE IS NO LIKELIHOOD OF CONFUSION BETWEEN THE MARKS.

The judgment criterion in Trademark Law to check if a conflict exists between trademarks is whether they create confusion in the minds of consumers. In all USPTO proceedings under §2(d), whether in the context of *ex parte* examination or in *inter partes* proceedings, the analysis is made using the "related goods" test. This "relatedness of the goods" test compares the goods and services in the applicant's application with the goods and services in the opposer's registration. *CBS, Inc. v. Morrow*, 708 F.2d 1579, 1581, 218 USPQ 198, 199 (Fed.Cir.1983). According to

this test, **likelihood of confusion depends upon whether the purchasing public would mistakenly assume that the Applicant's goods or services originate with, are sponsored by, or are in some way associated with the goods sold under a cited registration or trademark**. *See L. J. Mueller Furnace Co. v. United Conditioning Corp.*, 42 C.C.P.A. 932, 222 F.2d 755, 106 U.S.P.Q. 112 (1955) ("The test applied by this court in an opposition proceeding is the likelihood of confusion in the minds of the purchasing public as to the origin of the goods."); *Coca-Cola Co. v. Clay*, 51 C.C.P.A. 777, 324 F.2d 198, 139 U.S.P.Q. 308 (1963). **Each case must be decided on its own facts.**

**The Law recognizes there are situations where the concurrent use of similar trademarks is entirely lawful, and there may be "concurrent registrations" where confusion or mistake or deceit of purchasers as to the origin of defendant's goods is not likely to result from the continued use of the marks**. 15 U.S.C.A. §1052(d).

Moreover, "**the fact that both products at issue may be generally stated to be in one field, one market, or one product category, does not necessarily mean they are sufficiently related for confusion to be likely.**" (Emphasis provided) Hilliard, Welch II, Marvel, Trademarks and Unfair Competition (Lexis Nexis; Matthew Bender: San Francisco, 2007), pg. 129. A significant precedent on this regard was established in *Thermascan, Inc. v. Thermoscan, Inc.,* 295 F. 3d 623 (6th

Cir. 2002), **where similar marks were allowed to coexist despite offering goods within the same industry** (thermal imaging of human bodies v. electronic ear thermometers).

**In the present case, the goods identified in Appellee's Application and Opposer's cited registrations are neither similar nor related.** Appellee's identified goods are: "Perfumery, namely, perfume, toilet water, scented water, cologne, essential oils for personal use, cosmetics, namely, body, face and skin moisturizing creams, lotions and tonics" in **International Class 003**; "Leather handbags, imitation leather sold in bulk; umbrellas, parasols, walking sticks, whips and harness; billfolds and wallets made of leather" in **International Class 018**; and "Clothing, namely, suits, coats, raincoats, pants, dresses, shirts, sweaters, stocking, scarves, shoes, slippers, boots; gloves and hats" in **International Class 025**.

On the other hand, Opposer's marks are SFERRA, U.S. Reg. No. 3205168, and SFERRA BROS., U.S. Reg. No. 3012913, both in **international class 024** for "table linen; table linen, namely, tablecloths not of paper, coasters, table mats not of paper, napkins, placemats, table runners; bed linen, bed sheets, bedspreads, pillow cases, pillow covers, pillow shams, duvet covers, blankets, throws, lap robes; baby blankets, baby bed linens, baby quilts, shams; guest towels, bath towels, hand towels, washcloths and bath sheets." **As it clearly shows, none of the products in Applicant's list of identified goods appears in Opposer's registrations.**

**Moreover, Applicant's goods and those identified with Opposer's registered marks are of a different kind, category, and nature, and correspond to different classes of goods.** Specifically, Applicant's goods correspond to International classes 003, 018 and 025, whereas the goods in Opposer's registrations correspond to International class 024. **Consequently, because of the very nature of these goods, they are completely different in terms of their type, contents, and presentation. Therefore, these trademarks can coexist as confusion between them is unlikely.**

**Further, the parties' goods have different channels of trade and target different consumers**. Opposer has failed to establish that the parties' goods target or have the same consumers. By the very nature of the goods, consumers looking to buy the goods under Applicant's mark (e.g., lotions, creams, leather handbags, and coats) are not the same looking to buy luxury towels, sheets, and linens. **Given their nature, they <u>are not</u> in the same industry or are closely related. The mere fact that the parties' goods, in general terms, may be sold on the internet, department stores and other retail outlets does not mean that they are identical or closely related or that they cannot coexist.** In fact, Appellant's evidence does not even establish that the parties' identified goods are in the same industry. In any event, however, significant precent has recognized that similar marks are allowed to coexist <u>despite offering goods within the same industry.</u> *See Thermascan, Inc. v.*

*Thermoscan, Inc.*, *supra*. As previously stated, "the fact that both products at issue may be generally stated to be in one field, one market, or one product category, does not necessarily mean they are sufficiently related for confusion to be likely." Hilliard, Welch II, Marvel, Trademarks and Unfair Competition, *supra*.

By the same token, the mere fact that the parties' goods maybe sold in retail outlets and the internet does not mean that consumers are likely to confuse their respective source of origin. If this were true, then consumers would always assume that all goods with marks having somewhat similar literal elements come from the same source.

In fact, **Appellant failed to provide evidence** to establish that the purchasing public would mistakenly assume that Appellee's identified goods originate with, are sponsored by, or are in some way associated with the goods identified in Appellant's cited registrations or trademarks. **As previously stated, this is critical to a finding of likelihood of confusion under the correct legal standard: the "related goods test**". *See L. J. Mueller Furnace Co. v. United Conditioning Corp., supra*; *Coca-Cola Co. v. Clay*, *supra*.

In reaching its conclusion that the parties' goods and their channels of trade and consumers do not overlap, the Board applied the "related goods test" to the evidence submitted by Appellant (as it cited *Recot, Inc.* v. *Beneton*, 214 F.3d 1322,

54 USPQ2d 1894, 1898 (Fed. Cir. 2000)[1] and thoroughly explained how the evidence was insufficient and "of no help to Opposer".[2] As the Board noted:

> Opposer *has failed to introduce any evidence that the goods are related, or that they are marketed in a manner that could give rise to the mistaken belief that they emanate from the same source*. In fact, in the sections of its Trial Brief subtitled "Applicant's Intended Goods are Highly Similar to Sferra's Goods" and "Applicant's Trade Channels Are Likely to Be the Same as Those Used By Sferra," **Opposer cites only**: the involved application and pleaded registrations and their identifications of goods; Opposer's common law use of its SFERRA mark for to Applicant's priority (filing) date; materials from Opposer's NOR; Opposer's "belief" that Applicant has not yet used its involved mark in the United States; Applicant's foreign use of its involved mark; and Opposer's channels of trade and advertising practices. 67 TTABVUE 21-25 & fns. 25-34.
>
> **The cited evidence is of no help to Opposer**. In fact, the goods for which Opposer has not established prior use are irrelevant to its likelihood of confusion claim. The materials in Opposer's NOR **which are not supported by accompanying testimony are not admissible for the truth of the matters asserted therein**, but instead are admissible only for what they show on their face. *Safer*, 94 USPQ2d at 1037 n.14 and 1040. **Opposer's channels of trade and advertising practices are insufficient to establish that the parties' channels of trade and classes of consumers overlap, when Opposer provides evidence of only Applicant's foreign use the involved mark, because Applicant's foreign use is irrelevant in this United States opposition proceeding**. *See Double J of Broward Inc. v. Skalony Sportswear GmbH*, 21 USPQ2d 1609, 1612-13 (TTAB 1991) ("Information concerning applicant's foreign activities, including foreign trademark applications and/or registrations, is not relevant to the issues in an opposition proceeding.").
>
> **That leaves Opposer with nothing more than attorney argument that the goods are related and travel in similar channels of trade to**

---

[1] *See* Appx14.
[2] *See* Appx15.

> **the same classes of consumers. But mere attorney argument is of no help either**. *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 127 USPQ2d 1797, 1799 (Fed. Cir. 2018) ("Attorney argument is no substitute for evidence.") (quoting *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 424 F.3d 1276, 1284, 76
>
> […]
>
> Furthermore, Opposer's argument that the goods are "presumed to travel in the same channels of trade to the same class of purchasers," 67 TTABVUE 24, is misplaced. **The presumption Opposer cites applies when the identified goods are identical, but here, as explained above, there is no evidence that the parties' goods are even related**. *See In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *Am. Lebanese Syrian Associated Charities Inc. v. Child Health Research Inst.*, 101 USPQ2d 1022, 1028 (TTAB 2011). While we may presume that the parties' goods will be "offered in all channels of trade which would be normal therefor," *In re Jump Designs, LLC*, 80 USPQ2d 1370, 1374 (TTAB 2006), **Opposer has not provided any evidence regarding the "normal" channels of trade for Applicant's identified goods in the United States**.
>
> In short, Opposer has not established that the goods are related or that they are offered in overlapping channels of trade to the same consumers. These factors weigh heavily against finding a likelihood of confusion.

(Appx14-16) (Our emphasis.)

In an effort to question the validity and correctness of the Board's findings, Appellant claims that the Board did not consider Appellant's evidence of certain similar, related goods sold by both parties, because Appellant's use did not predate the Application's filling date. Appellant claims that it did present evidence of sales of clothing prior of Applicant's filing date and cited four exhibits: Appx172, Appx573, Appx766 and Appx723. (Appellant's Brief, doc. 16, p. 24.)

Nevertheless, the problem with Appellant's claim is that it ignores a key

passage in the Board's Order, explaining that that the documents submitted by Appellant with its Notice of Reliance "**are not supported by accompanying testimony are not admissible for the truth of the matters asserted therein**, but instead are admissible only for what they show on their face. ***Safer*, 94 USPQ2d at 1037 n.14 and 1040**." (Appx14-16) (Our emphasis.)

Evidently, contrary to Appellants contention, the Board did cite legal precedent in support of Appellant's evidentiary problems, namely, *Safer, Inc. v. Oms Investments, Inc.*, 94 U.S.P.Q.2d 1031 (T.T.A.B. 2010). In that case, the Board rejected certain internet materials because "the documents have not been authenticated for purposes of submission by notice of reliance, nor have they been authenticated by testimony." The Court explained that while certain internet materials may be presented as evidence by way of Notice of Reliance, they nevertheless need to comply with the requirements of authentication and admissibly, including relevance, and the purpose for which they are presented and claimed to prove. *See Id*. "[Web pages which are not the equivalent of printed publications are not admissible under a notice of reliance." *Id,* citing *Paris Glove of Can. Ltd. v. SBC/Sporto Corp.*, 84 USPQ2d at 1858-59 (TTAB 2007). As explained by the Board, in addition to the admissibility requirements, a webpage printout has certain limitations on its probative value: "This approach facilitates the introduction of matter for the limited purpose of demonstrating what the documents show on their

face. We underscore that a printout from a webpage may have more limitations on its probative value than traditional printed publications. A party may increase the weight we will give such website evidence by submitting testimony and proof of the extent to which a particular website has been viewed. Otherwise, it might not have much probative value." *Id* at 9.

In fact, this is in accord with the standard for substantial evidence. "The Supreme Court has indicated that **'[s]ubstantial evidence is more than a mere scintilla**. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.... **Mere uncorroborated hearsay or rumor does not constitute substantial evidence**. *In re Gartside*, 203 F.3d at 1312, 53 USPQ2d at 1773 (quoting *Consolidated Edison,* 305 U.S. at 229–30, 59 S.Ct. 206)." *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085–86 (Fed. Cir. 2000) (Our emphasis.) In any event, the fact remains that Appellant proffered no valid, adequate, substantial evidence to establish that the purchasing public would mistakenly assume that Appellee's identified goods originate with, are sponsored by, or are in some way associated with the goods sold under Appellant's cited registrations or trademarks.

Likewise, the Board noted that Appellant "also introduced evidence that it offers bathrobes, scarves, diffusers and candles. 55 TTABVUE 21, 262, 311-12, 367-68 (Klein Dec. ¶ 28 and Ex. 5). However, there is no evidence concerning when

Opposer started offering these goods, and therefore **Opposer has not established common law use** of either of its pleaded marks for these goods prior to Applicant's priority/filing date of December 12, 2014. *See Cent. Garden & Pet Co. v. Doskocil Mfg. Co.*, 108 USPQ2d 1134, 1140 (TTAB 2013) ("for when an application or registration is of record, the party may rely on the filing date of the application for registration, *i.e.*, its constructive use date"). (Appx 7) (Our emphasis.)

Evidently, the problem with Appellant's proffered evidence is that it was submitted without any testimony and underlying evidence, and thus, did not meet the admissibility and probative value standards established in *Safer, Inc., supra; In re Gartside, supra, Consolidated Edison, supra.,* it has also failed to establish common law use. As a result, the Board has to rely solely on the information appearing in Appellant's pleaded registrations, including, their identification of goods, because that is the only admissible evidence that has before its consideration.

Accordingly, the extrinsic evidence proffered by Appellant by way of its Notice of Reliance is insufficient to establish that the parties' goods are related, as it has little probative value since it was not supported by testimony and does not show that Appellant actually sold those items. "The Supreme Court has indicated that '[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.... Mere uncorroborated hearsay or rumor does not constitute substantial evidence. *In re*

*Gartside*, 203 F.3d at 1312, 53 USPQ2d at 1773 (quoting *Consolidated Edison*, 305 U.S. at 229–30, 59 S.Ct. 206).” *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085–86 (Fed. Cir. 2000).

The “evidence” of Appellant’s alleged prior use of items not encompassed in its registrations consists of advertising material and a “price list”, which is not acceptable evidence to establish actual use of a mark in connection with goods. Advertising material may, if proper, serve to show actual use of a service mark. Likewise, a price list does not show actual sales. Furthermore, even if the evidence could serve to proof that Appellant actually “offered” the type of goods named therein, the exhibits do not show the mark in connection with the specific goods, and do not show actual, continued use of the mark in connection therewith in United States commerce.[3]

[3] *See* Custom Vehicles, Inc. v. Forest River, Inc., 476 F.3d 481, 486, 81 U.S.P.Q.2d 1753, 1757 (7th Cir. 2007); and Philip Morris, Inc. v. Imperial Tobacco Co. (of Great Britain and Ireland), Limited, 251 F. Supp. 362, 378, 148 U.S.P.Q. 255 (E.D. Va. 1965), decision supplemented, 282 F. Supp. 931, 156 U.S.P.Q. 239 (E.D. Va. 1967), judgment aff'd, 401 F.2d 179, 158 U.S.P.Q. 561 (4th Cir. 1968), amended on denial of reh'g, 159 U.S.P.Q. 257, 1968 WL 162039 (4th Cir. 1968) (“**Imperial's shipments of cigarettes and smoking tobaccos bearing the mark PLAYER'S to the United States before 1957 were sporadic, casual and nominal in character and thus created no rights in Imperial ….**”) (Our emphasis.) *See also* § 16:9. Prior and continuous usage is required, 2 McCarthy on Trademarks and Unfair Competition § 16:9 (5th ed.) (“To establish ownership of a mark, **the prior user must establish not only that at some date in the past it used the mark, but that such use has continued to the present**. Such a continuous use implies something more than mere sporadic or de minimis sales. Initial use of the mark, followed by a long period of nonuse, may result in abandonment of whatever rights accrued to the

In fact, the evidence is so limited: merely four (4) "documents" devoid of context, underlying data and testimony that, at most, **may show sporadic, nominal and/or "de minimis" offering of robes and handkerchiefs, which are insufficient to warrant trademark protection and/or create an impact on the relevant class of consumers.** It must also be noted that the only "clothing" articles named in these exhibits are robes, and one of them also mentions "handkerchiefs" (the price list). (Appx172, Appx573, Appx766, and Appx723) **However, <u>none</u> of these articles appear in Appellee's identified goods.** Moreover, the common name of the goods appears in very small fonts, some are included as hashtags (*e.g.*, #robes), very convoluted and mixed with several other expressions and, thus, are imperceptible and difficult to read.

While Appellant also proffered other extrinsic evidence, they were also submitted via Notice of Reliance and face the same admissibility, relevance and probative value issues (submitted without any testimony and underlying evidence). (Appx171-172; Appx193; Appx355, Appx404-405, Appx408, Appx460, Appx504, Appx523-524, Appx563, Appx1370) For instance, no context and supporting

---

initial usage. Or alternatively, such an isolated use may be deemed never to have created any rights at all. For example, it was held that a single use of a mark in a catalog, not followed by any other use at all did not result in the creation of any trademark rights. For example, a single sale of one product, "followed by frenetic but futile efforts to make a second sale" did *not* justify recognizing trademark rights in the designation, thereby "denying its use to sellers who can actually sell.")

evidence in the way of testimony of others was provided. The documents do not even show or refer to a date of first use; do not show actual and continued use-either in the US or elsewhere-; do not show actual sales and the extent of them, if any; some constitute promotional materials that do not serve to prove actual use; and some do not even show if they were even made available to the public. Likewise, the exhibits include articles that either do not appear in Appellant's identification of goods or vice versa; therefore, it constitutes extrinsic evidence that did not need to be considered by the Board in its analysis, as further discussed below. In fact, given its lack of admissibility, authenticity and reliability, they cast doubts as to the possibility of Appellant producing them for purposes of gathering some evidence of articles not in its identification of goods for purposes of this opposition.

It is important to keep in mind that, contrary to Appellant's contention, the Board's analysis must be based on the goods identified in the parties' respective marks at the USPTO. "It is established beyond peradventure that our analysis of the second *du Pont* factor **must be based on a comparison of the goods identified in the application and the cited registration, respectively, not on extrinsic evidence of actual use.** *E.g., Coach Servs. Inc. v. Triumph Learning LLC*, 101 USPQ2d at 1722; *Octocom Sys., Inc. v. Houston Computer Servs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990). When identifications are technical or vague and require clarification, it is appropriate to consider extrinsic evidence of use to

determine the meaning of the identification of goods. *See, e.g., Edwards Lifesciences Corp. v. VigiLanz Corp.*, 94 USPQ2d 1399, 1410 (TTAB 2010); *In re Trackmobile*, 15 USPQ2d 1152, 1154 (TTAB 1990). Here, the description "hand tools, namely, wrenches" is neither vague nor technical and does not require clarification through extrinsic evidence." *In Re C. H. Hanson Co.*, 116 U.S.P.Q.2d 1351 (T.T.AB. 2015) (Our emphasis.)

With that in mind, we must also point out that Appellant relied on said case, *In Re. C. H. Hanson Co.*, to try and establish that the Board erred in its determination, arguing that in previous occasions it has refused registration based on the relatedness of the goods "for as little as *one* common good in the application". However, while there is *some* truth is Appellant's statement, the reality is that Appellant's rationale is ill-founded and fails to provide important context and factual background that readily confirms its inapplicability to this case. *In Re. C. H. Hanson Co.* presented a completely different set of facts and circumstances, as the parties' goods were found to be related because they both included "wrenches" <u>in the identification of goods</u> for tools <u>in the same class (int. class 8)</u>, and it made no difference if they were "specialized" or "common" wrenches. The Board's analysis in that case was based on the respective description of goods appearing in the parties' applications and registration.

Here, however, the fact remains that <u>the goods identified in Appellant's</u>

registrations and Appellee's applied-for mark are completely different and do not overlap, and the Board reached its conclusion by analyzing the goods identified in Appellant's registrations and Appellee's application. While Appellant attempts to convey the impression that its extrinsic evidence (which, as previously explained, the Board found irrelevant), needed to be considered by the Board and that it was sufficient to support relatedness of the goods for articles that are not comprised in its registered services, this is not what was established in *In Re. C. H. Hanson Co*. On the contrary, while the Board in *In Re. C. H. Hanson Co*. noted that it is sufficient for a finding of likelihood of confusion if relatedness is established *for any item*, it further made it clear that such item must be encompassed by the identification of goods within a particular class in the application and cited registrations at issue. As in *In Re. C. H. Hanson Co.,* in the instant case the parties' identification of goods are not technical or vague or require clarification; therefore, extrinsic evidence is irrelevant, and it would be inappropriate to take it into consideration.

But the problem with Appellant's theory does not end here. Appellant further relied on *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1267 (Fed. Cir. 2002), with a partial quote of the case, to try and claim that when an intent-to-use applicant is not yet using its mark in connection with the sale of the goods in the United States, evidence that a single company "…sells the goods and services of both parties… is relevant to a relatedness analysis."

Nevertheless, the facts and circumstances in Hewlett-Packard were also quite different. Specifically, in that case the Board dismissed the opposition because the opposer "failed to establish that the goods and services involved herein are related in the mind of the consuming public as to their source or origin." *Hewlett-Packard Co. v. Packard Press, Inc., ante*, 1265. Nevertheless, in reaching its conclusion, the Board did not consider the description of the goods and services in the application and cited registrations at issue. Therefore, this Court concluded that Board erred when it declined to compare the services described in the application with the goods and services described in the opposer's registrations. *Id*, at 1267. In fact, the parties' descriptions of goods and services in the application and cited registrations were very similar (e.g., "data and information processing" *vis-à-vis* consulting services, whether for data processing or for data processing products; "electronic transmission of data and documents via computer terminals" *vis-à-vis* facsimile machines, computers, and computer software.) Here, however, the parties' identified goods are completely different and do not overlap.

Appellant also cited *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1086 (Fed. Cir. 2000), where the Court confirmed the Board's relatedness finding, noting that the parties' services "have been shown to be available from a single source." Not surprisingly, however, Appellant failed to provide context. To that effect, it is important to point out that in that case, a hearing was held, and

testimony was provided by the parties. *On-Line Careline, Inc.*, *ante*, at 1083. In fact, the Court noted that the services associated with both marks are related to the use of the Internet and pursuant to the testimony from Applicant's own witness, a user could subscribe to both companies' services. *Id*, at 1086. Again, however, On-Line Careline, Inc. facts and circumstances are different form the instant case, since the evidence produced by Appellant in this case to support its related goods claim was very limited, was not supported by testimony or underlying data, and has little or no probative value, and the description of the parties' goods are completely different and do not overlap. (pp.14-16) (Our emphasis.)

On the other hand, Appellant also *partially* cites *U. of S. California*, 2008 WL 3333839, (T.T.A.B. 2008) in support of its theory that if an opposer introduces evidence that it sells the goods and intended goods of both parties, the evidence is probative to show relatedness. Nevertheless, the main problem with this case is that it specifically states in a prominent manner that "THIS OPINION IS NOT A PRECEDENT OF THE TTAB". **Therefore, it does not constitute a citable legal precedent and should not be given any consideration.**

The second problem is that Appellant again included a partial, edited quote, without providing important context. Although the Board noted that applicant "itself markets both clothing items and other goods like those identified in California's registration. (Stip. Facts Nos. 5, 40.)", it is evident that **such finding was made**

**pursuant to the parties' stipulations of facts.** It should also be noted that in its opinion, the Court pointed out that "[i]f California's Section 2(d) claim based on its ′953 registration is to succeed, **it must do so on the basis of the Class 6, 18 and 24 goods identified in the registration**." U. of S. California, *ante,* at 6. (Our emphasis.) Accordingly, Appellant's argument is without merit.

Similarly, Applicant cited *In Re Melanie Hart,* 77909807, 2013 WL 3001432 (T.T.A.B 2013); *Industria De Diseño Textil, S.A. (Inditex, S.A.),* 91245732, 2023 WL 6996329 (T.T.A.B. 2023); *American University v. American University of Kwait*, 9204970, 2020 WL 919246, (T.T.A.B. 2020); *In Re Telechat Network, Inc.,* 76535248, 2006 WL 1404223 (T.T.A.B 2006), which also specifically state in a prominent manner that "THIS OPINION IS NOT A PRECEDENT OF THE TTAB" or "THIS DISPOSITION IS NOT CITABLE AS PRECEDENT OF THE TTAB." **Therefore, they do not constitute citable legal precedents and should not be given any consideration by the Court.**

Appellant also contends that the Board was obligated to resolve any "doubt" in favor of Appellant as prior registrant. The problem with such an argument made in the air, is that it not always applies, and, in this case, the Board did not make any finding or conclusion, or even stated any "doubt". The Board was very determined when making its findings, including those related to Appellants probative problems. Therefore, such argument is without merit.

Additionally, Appellant claims that the Board erred by ignoring evidence of Appellee's sale of SFERA goods online and in retail stores **abroad**. (Appellant's Brief, doc. 16, p. 25.) According to Appellant's theory, "contrary to the Board's misapplication of Federal Circuit Law, foreign website evidence *can* be relevant and probative in opposition and cancellation proceedings on a case-by-case basis. The Board's misapplication of the law led it to disregard unrebutted and obvious evidence on Appellee's trade channels and the Board's finding on this factor is, once again, unsupported by substantial evidence." *Id*.

**The main problem with Appellant's contention is that Appellant did not cite any valid, applicable legal precedent in support thereof.** First, Appellant cites *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 968 (Fed. Cir. 2007), claiming that "this Court acknowledged that information from websites or news publications can be relevant to a likelihood of confusion analysis, refuting that this evidence should be summarily rejected as irrelevant." Yet, once again, Appellant provided little or no context, and conveniently failed to mention that the internet evidence therein discussed was related to the meaning of the term "Aspirin" in English and Spanish, including dictionary definitions and the like. It also failed to mention several concerns raised and acknowledged is that case and others, regarding the little probative value of certain internet evidence. For instance, the Court noted: "Bayer asserts that the list of GOOGLE search result summaries is of lesser probative value

than evidence that provides the context within which a term is used. We agree. Search engine results—which provide little context to discern how a term is actually used on the webpage that can be accessed through the search result link—may be insufficient to determine the nature of the use of a term or the relevance of the search results to registration considerations." *In re Bayer Aktiengesellschaft, ante,* at 967. Later in its opinion, the Court also concluded that "[t]he probative value, if any, of foreign information sources must be evaluated on a case-by-case basis." *Id* at 969.

We also bring to this Court's attention that the *In re Bayer* case has had some negative treatment. For instance, in *In re The Newbridge Cutlery Co.*, 776 F.3d 854, 863 (Fed. Cir. 2015) The Court stated: "[f]urther, it is simply untenable that any information available on the internet should be considered known to the relevant public. The fact that potential purchasers have enormous amounts of information instantly available through the internet does not evidence the extent to which consumers of certain goods or services in the United States might use this information to discern the primary significance of any particular term.

Similarly, in *In re the New York Times Co.*, 90106071, 2023 WL 2729414 (T.T.A.B. 2023), the Court cited In re Bayer and others while discussing the probative value and concerns of internet evidence and stated that: [t]his is especially true with regard to other refusals where the context of the entire web page is critical. *See, e.g., In re BayerAg*, 488 F.3d 960, 82 USPQ2d 1828, 1833 (Fed. Cir.

20223)(deeming Google® search results that provided very little context of the use of ASPIRINA to be "of little value in assessing the consumer public perception of the ASPIRINA mark"); In re Tea & Sympathy, Inc., 88 USPQ2d 1062, 1064 n.3 (TTAB 2008) (finding truncated Google® search results entitled to little probative weight without additional evidence of how the searched term is used)." In Re the New York Times Co., 90106071, 2023 WL 2729414, Fn. 21 (T.T.A.B. 2023).

Likewise, Appellant cites *In re King Koil Licensing Co., Inc.*, 79 U.S.P.Q.2d 1048 (T.T.A.B 2006), with an edited, partial quote, claiming that it referred to information on a foreign website that "would be accessible by prospective consumers in the United States searching for products available in the United States". However, as the quote states, the website would be accessible by prospective consumers in the United States searching **for products available in the United States**. Nevertheless, contrary to Appellant's allegation, **the case had nothing to do with likelihood of confusion**; rather, the mark (THE BREATHABLE MATTRESS) for goods identified as "beds, mattresses, box springs and pillows" was not registrable because it utilizes a descriptive term (BREATHABLE) and a term that is generic for one of the items listed in applicant's identification of goods (MATTRESS for "mattresses"). *In re King Koil Licensing Co., Inc.*, 79 U.S.P.Q.2d 1048 (T.T.A.B. 2006) Also, the Board did not determine that it was a foreign website. **In fact, the specific paragraph discussed websites which the Board determined that were**

**form U.S. companies**.

The second problem with Appellant's claim that the Board erred by ignoring evidence of Appellee's sale of SFERA goods online and in retail stores abroad, is that it once again ignores a key passage in the Board's Order stating that: "Opposer has not provided any evidence regarding **the "normal" channels of trade for Applicant's identified goods in the United States**." (Appx 6) (Our emphasis.). Likewise, even assuming *arguendo* that the evidence of Appellee's foreign website was relevant, it serves to prove that the parties' channels of trade are completely different.

During trial, Appellant claimed that since Appellee has not used the mark in the United States and has not specified a particular channel of trade in which it intends to sell its goods, it is assumed "they will in all usual trade channels." **(Opposer's Trial Brief at pages 7, 16-17.)** However, as correctly noted by the Board, such presumption is misplaced because it only "applies when the identified goods are identical, but here, as explained above, there is no evidence that the parties' goods are even related. *See In re Viterra Inc.,* 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *Am. Lebanese Syrian Associated Charities Inc. v. Child Health Research Inst.,* 101 USPQ2d 1022, 1028 (TTAB 2011)." (Appx16)

Moreover, the evidence proffered by Appellant to support this contention is that Appellee sells its goods outside of the United States **via its own online website**

and **its own physical store locations**, and through El Corte Ingles, a well-known Spanish department store chain **and related party**. **(Opposer's Trial Brief at pages 7, 16-17.)**

Conversely, Appellant claims that its "retail customers include department stores such as Bloomingdale's, Nordstrom, Saks-Fifth Avenue, Bergdorf Goodman's, and Neimen Marcus." **(Opposer's Trial Brief at pages 4; 16-17.)** Appellant claims that it **also sells and advertises its goods "**on the Sferra website, www.sferra.com, and on various third party websites and advertised in major national publications, such as Town and Country, Architectural Digest, The Washington Post, Instyle, Forbes Life, and more. Sferra also sells the Sferra Goods at pop-up boutique locations, including one in The Hamptons." **(Opposer's Trial Brief at pages 16-17.)** "Both parties' market, promote, offer for sale, and sell their goods direct to consumer ***<u>on their respective websites</u>*** and in department stores worldwide." **(Opposer's Trial Brief at pages 16-17.) (Our emphasis.)**

Accordingly, Appellant's proffered evidence proves **on its own** that it is well aware that the parties' marks have coexisted without any consumer confusion and that the parties' marks have their respective channels of trade, which are completely different. Particularly, when Appellant admits that **the parties sell their goods online <u>through their own websites and through different department stores, and Appellee's channels of trade are their own outlets and the El Corte Ingles</u>**

**stores, which is a related party. (Opposer's Trial Brief at pages 4, 7, 16-17.) Clearly, Appellant's own allegations and evidence proffered prove that the parties' goods already travel in different channels of trade!**

b. THE BOARD CORRECTLY REJECTED TO APPLY A PRESUMPTION REGARDING THE CHANNELS OF TRADE

Appellant's third contention is that the Board committed an additional misstep in analyzing the "trade channels" factor by misapplying a presumption that Appellee's goods will be eventually sold in all "normal and usual" trade channels, based upon its unrestricted Application. **However, once again Appellant failed to include valid, applicable legal precedent to support its claim.**

For instance, Appellant cites *In re I.AM.Symbolic, LLC,* 866 F.3d 1315 (Fed. Cir. 2017), where the parties' goods at issue belong to the same international classes. However, in that case this Court concluded:

> Here, substantial evidence supports the Board's findings that the will.i.am restriction does not impose a meaningful limitation and the registrations at issue do not contain any express limitations.[6] Thus, unlike in *M2 Software*, the application and registrations here do not contain meaningful limitations in the identification of goods. As a result, the Board properly declined to import restrictions into the identification of goods **based on alleged real-world conditions.** *See Stone Lion Capital Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 1323 (Fed. Cir. 2014) ("**It was proper, however, for the Board to focus on the application and registrations rather than on real-world conditions, because 'the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application**.' " (quoting *Octocom Sys., Inc. v. Hous. Comp. Servs. Inc.*, 918 F.2d 937,

> 942 (Fed. Cir. 1990))); *Octocom*, 918 F.2d at 942 ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, **the particular channels of trade or the class of purchasers to which sales of the goods are directed**." (collecting cases)).

*In re I.AM.Symbolic, LLC, ante*, 1326–27 (Our emphasis.)

Accordingly, as the Board correctly noted in the instant case, its determination must be based on a comparing the goods identified in the application and registrations. Since its analysis and findings show that the Board found them not to be identical or closely related, that on its own is dispositive for not applying a presumption that the goods will travel in the same channels of trade. Therefore, this case does not support Appellant's argument; rather, it supports Appellant's theory and the Board's determination.

It should also be noted that, contrary to Appellant's contention, the presumption that the parties' goods will travel in the same channels of trade may only be applied if the parties' goods and services identified in the application and registration are legally identical or partially identical. Again, such determination must be made solely on the basis of the identification of goods set forth in the application. *See Genesco Inc. and Genesco Brands Inc. v. Gregory Martz,* 66 U.S.P.Q.2d 1260 (T.T.A.B. 2003), *In re Smith and Mehaffey,* 31 USPQ2d 1531, 1532 (TTAB 1994), and *Safer, Inc. v. Oms Investments, Inc.*, *supra*.

Moreover, the fact still remains that, as previously stated, Appellant did not provide any evidence regarding the "normal" channels of trade for Applicant's identified goods in the United States (Appx 6)(Our emphasis.). Likewise, the evidence it proffered about the parties' channels of trade show that they are completely different, as Appellee sells its goods through its own website and physical stores, and through its related party's department stores El Corte Ingles.

c. APPELLANT'S CONSUMER SOPHISTICATION

Appellant further claims that the Board erred by incorrectly finding the "purchaser and purchasing conditions" factor as neutral, "*despite finding that both parties sold their goods to consumers of inexpensive retail goods*." (Appellant's Appeal Brief at p. However, contrary to Appellant's averments, as part of the "relevant facts" listed in its Opinion, the Board found that "**Opposer's 'luxury' linens and linen-related products are, not surprisingly, expensive**. For example: table runners are priced from $44-$144; bedding collections from $95-$4298; mattresses from $3,725-$6,995; bed pillows from $87-$7,331; and dog beds at $245. *Id.* at 8-9 (Klein Dec. ¶ 23)." (Appx5) (Our emphasis.) **In fact, nowhere in its Opinion did the Board make a finding that "both parties sold their goods to consumers of inexpensive retail goods.**" While the Board did make a finding as to Appellee's argument that, pursuant to the evidence of record, particularly Appellant's own allegations that it is a "prominent luxury brand", that it sells "luxury

goods" to "consumers in the market for luxury linen goods" (and many similar allegations as to the *luxury* nature of its goods), Appellant's consumers are sophisticated. In other words, the Board's finding related to the sophistication of Appellant's target and actual consumers, and its finding was based solely on the contents of Appellant's registrations.

Appellee argued and hereby reiterates its allegations that given the evidence on the record, including Appellant's repeated allegations as to the luxury goods its sells[4], Opposer's consumers are sophisticated; therefore, they would not think that they come from the same source. On the contrary, they will be able to distinguish the parties' goods and would not be confused into thinking they are related. *See Tiffany and Company v. Costco Wholesale Corporation*, 971 F.3d 74, 90-91, (2d Cir. 2020) (Reversing summary judgment of infringement and a likelihood of confusion. One of the *Polaroid* factors that created a triable issue of fact for trial was the care buyers would exercise in buying diamond rings priced at $2500. and up. "A jury could reasonably conclude, … that the relevant population of consumers would be sufficiently attentive and discriminating as to recognize that Tiffany had nothing to do with Costco's diamond engagement rings."). Since the Board determined as a relevant fact that Appellant's **"'luxury' linens and linen-related products are, not**

[4] *See* for example Appellant's Trial B., pages 3, 4 and 14.

**surprisingly, expensive**," thus, they sell for more than the usual price for such goods, including bedding collection that are priced at **$4,298** and dog beds at **$245**, their consumers are definitely sophisticated. For these same reasons, this Court can reasonably conclude that the relevant population of consumers would be sufficiently attentive and discriminating as to recognize each of the parties' goods. (Appx1) (Our emphasis.) Accordingly, contrary to Appellant's contention, this factor weighs heavily against a finding of likelihood of confusion.

d. SUBSTANTIAL EVIDENCE SUPPORTS THAT APPELLANT'S MARK IS NEITHER STRONG, NOTORIOUS NOR FAMOUS

In addition to the foregoing, Appellant also claims that the Board erred in finding that its marks were only somewhat strong, by failing to give proper weight to their alleged commercial strength. Appellant's claim that the Board discounted its evidence of "significant sales and advertising expenditures" because it did not provide evidence showing third party context for those sales and expenditures relative to the others in the marketplace. It further claims that this Court has already rejected the Board's reliance on this "context" argument in other cases.

In support, Appellant cites *Omaha Steaks Intl., Inc.*, 908 F.3d 1315 (Fed. Cir. 2018) arguing that "[in] determining commercial strength, the Board may consider evidence of a party's volume of sales, advertising expenditures, or other indicia of commercial strength *without* context of third-party sales and expenditures for comparison." Appellant's Brief at 49. (Emphasis in the original.) Again, with its own

characterization of interpretation of the Court's findings and ruling. Specifically, Appellant stated that *Omaha Steaks Intl., Inc.*, at 1321-1322 explains "that the Board misreads its prior *Bose*[5] decision where it requires third-party "context" for sales figures, explaining that the holding in *Bose* 'was not so narrow'." Appellant's Brief at 49.

However, that is not the case. Moreover, the facts and circumstances in *Omaha Steaks Intl., Inc.* were quite different from those of the instant case. Nevertheless, the precedent discussed therein contradicts Appellant's argument and supports the Board's determination.

First, the In *Omaha Steaks Intl., Inc.* Court explained that the Board had misread the *Bose* case, because in reaching its conclusion, it interpreted *Bose* to require evidence of resulting "market share." However, the Court did acknowledge the importance of evidence for contextualizing ad expenditures or sales figures, and that "raw numbers alone" may be misleading. In fact, the Court also noted that one form of such context would be the substantiality of the sales or advertising figures <u>for comparable types of products</u>. Thus, by noting that "Nonetheless, '[w]e have no context for opposer's advertising and sales figures,' or its other evidence of strength, '**such as how the figures for [products bearing Opposer's pleaded marks] compare with that for other brands of" linens and related products**", the

[5] *Bose Corp. v. QSC Audio Prods, Inc.*, 293 F.3d 1367 (Fed. Circ. 2022)

Board's determination was correct and in accordance with the Bose precedent. The Board's conclusion was not limited to Appellant's failure to produce evidence of market share or context of third-party sales and expenditures for comparison, alone. The Board's finding was that Appellant failed to provide context of Appellant's expenditures, sales and strength. When the Board referred to lack of context as to **how the figures for [products bearing Opposer's pleaded marks] compare with that for other brands of" linens and related products,**" the Board merely provided an example of the acceptable contextual evidence, namely, evidence of the substantiality of the sales or advertising figures <u>for comparable types of products.</u>

In words of the Court:

> The Board misreads *Bose*. The Board interpreted *Bose* to require evidence of resulting "market share." Our holding was not so narrow. Market share is but one way of contextualizing ad expenditures or sales figures. *See Bose*, 293 F.3d at 1375 ("**The Board suggested that one form of such context would be the substantiality of the sales or advertising figures <u>for comparable types of products</u>.**"). Though *Bose* expressly approves of using market share, it does not require it. *See id.* (discussing other contextual evidence such as "general reputation" of marked product).
> ***Bose*** **simply concluded that in light of modern advertising, "raw numbers *alone* in today's world may be misleading**." *Id.* (emphasis added). ***Bose*** **explained that understanding the type of advertising was key to contextualizing the numbers to arrive <u>at a proper understanding of whether customers would recognize the mark</u>. For example, "a 30-second spot commercial shown during a Super Bowl football game may cost a vast sum, but the expenditure may have little if any impact on how the public reacts to the commercial message**." *Id.* At the other end of the spectrum, "handbills passed at little cost to millions of consumers (for example, to New Yorkers

> exiting subway stations) may amount to the kind of advertising that is probative of consumer recognition of a mark." *Id.*

*Omaha Steaks Intl., Inc. v. Greater Omaha Packing Co., Inc., ante*, 1319–20. (Emphasis in the original and supplied.)

Furthermore, the Board found that "[Appellant's] 'luxury' linens and linen-related products are, not surprisingly, expensive. (Appx5) (Our emphasis.) Accordingly, Appellant's volume of sales may seem high given that its goods sell at a higher price than other goods of the same type. **It is not the same to sell one (1) bedding collection at $4,298 than selling forty (40) at $100. Without context, such "raw" figures would not show how Appellant's sales compare to those of its competitors for comparable types of products.**

By the same token, Appellant's "raw" ad expenditures have little probative value and may also be misleading, because the Board and this Court will be unable to have a proper understanding of how such advertising expenditures translate into <u>whether customers recognize Appellant's mark</u>. Even if Appellant expends a high amount in advertising and/or promoting its mark, such figures do not necessarily translate into fame, notoriousness, or strength. In fact, that is precisely the case with Appellant: its expenditures and sales do not show wide consumer acceptance or recognition, much less fame.

In spite of Appellant's lack of contextual evidence, the Board did consider all of the evidence of "fame" and strength proffered by Appellant and found that its

public exposure was **underwhelming**. Such a finding is in accordance with what the *Bose* determined, because, if Appellant's ad expenditures were to be extensive and high, they nevertheless have not resulted in consumer recognition or fame, pursuant to its own social media evidence. In words of the Board:

> Furthermore, public exposure to Opposer and its mark via social and traditional media **is underwhelming**, and suggestive of the SFERRA mark enjoying a moderate rather than high level of commercial strength. For example, while the record does not reveal how many people have "followed" or "liked" Opposer on Facebook, **Opposer's individual Facebook posts generally receive relatively few, if any, "likes," "shares" or comments**. 55 TTABVUE 5, 465-549 (Klein Dec. ¶ 13 and Ex. 8). **Similarly, Opposer has only a few thousand followers on Twitter and its individual "tweets" have received few if any comments, "likes" or "retweets."** *Id.* at 5, 552-680 (Klein Dec. ¶ 13 and Ex. 9). While Opposer has almost 13,000 Instagram followers, even **this higher number falls well short of what would be expected for "famous" or very strong marks.** *Id.* at 5, 682-810 (Klein Dec. ¶ 13 and Ex. 9). While Opposer's advertisements have appeared in FORBES LIFE, TOWN & COUNTRY, ARCHITECTURAL DIGEST and other publications, Opposer failed to introduce circulation figures for these publications, and the record reveals scant unsolicited media attention. *Id.* at 7-8, 68-87, 816-22, 905-11, 918-20 (Klein Dec. ¶ 21 and Exs. 2, 11).[8]

(Appx10) (Our emphasis.)

## VII. CONCLUSION AND RELIEF SOUGHT

"It is the opposer's burden to establish facts sufficient to support the conclusion that confusion, mistake, or deception is likely." *Bridgestone*, 673 F.3d at 1333. The Opposer bears the burden of proving its claim of likelihood of confusion by a preponderance of the evidence. *Cunningham*, 222 F.3d at 950. Appellant as Opposer failed to meet this burden before the Board below. The Board made a number of factual findings in reaching its determination that no likelihood of confusion exists, and those were and are each supported by substantial evidence.

Because the Board's factual findings were supported by substantial evidence, and because the Board's weighing of those factors was correct, Appellee respectfully requests that this Court **AFFIRM** the Board's dismissal of the opposition in this case.

Respectfully submitted.

Dated: March 15, 2024

*/s/ Samuel F. Pamias*
Samuel F. Pamias

*/s/ Aileen E. Vázquez*
Aileen E. Vázquez

*Counsels for Appellee*
*Sfera Joven S.A.*

## VIII. CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

As Appellee's brief exceeds the page limitation of Fed. R. App. P. 32(7)(A), as it exceeds 30 pages, and pursuant Fed. R. App. P. 32(g)(1) and Fed. Circ. R. 32(b)(3), counsels of record certify that the Brief of Appellee Sfera Joven S.A. is in compliance with the type-volume limitation of Fed. R. App. P. 32(7)(B) & Fed. Circ. R. 32(b)(1), as it was prepared using Times New Roman font which is a proportionally-spaced typeface, and it contains no more than 14,000 words. The Brief of Appellee Sfera Joven S.A. includes a total of 9583 words, excluding items exempted by the Fed. R. App. P. 32(f) and Fed. Circ. R. 32(b)(2).

Dated: March 15, 2024

*/s/ Samuel F. Pamias*
Samuel F. Pamias

*/s/ Aileen E. Vázquez*
Aileen E. Vázquez

HOGLUND & PAMIAS, P.S.C.
256 Eleanor Roosevelt
San Juan, Puerto Rico 00918
Tel. (787) 772-9834
Fax. (787) 772-9533
samuel@hhoglund.com
aileen@hhoglund.com

*Counsels for Appellee*
*Sfera Joven S.A.*

## IX. CERTIFICATE OF SERVICE

We hereby certify that on March 15, 2024, a true and correct copy of Brief of Appellee Sfera Joven S.A. was filed with the Clerk of the United States Court of Appeals for the Federal Circuit and served on all counsel of record by the Court's CM/ECF system.

*/s/ Samuel F. Pamias*
Samuel F. Pamias

*/s/ Aileen E. Vázquez*
Aileen E. Vázquez

*Counsels for Appellee*
*Sfera Joven S.A.*