**No. 23-2198**
**(Opposition No. 91226943)**

## United States Court of Appeals
## for the Federal Circuit

SFERRA FINE LINENS, LLC
*Appellant*

v.

SFERA JOVEN S.A.
*Appellee*

*Appeal from the United States Patent and Trademark Office,*
*Trademark Trial and Appeal Board*

## REPLY BRIEF OF APPELLANT

Philip R. Bautista
JoZeff W. Gebolys
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114
pbautista@taftlaw.com
jgebolys@taftlaw.com
(216) 241-2838

*Counsel for Appellant*
*Sferra Fine Linens, LLC*

APRIL 5, 2024

## CERTIFICATE OF INTEREST

Counsel for Appellant Sferra Fine Linens, LLC certifies as follows:

1.     The full name of every party represented by Taft Stettinius & Hollister LLP ("Taft") is: **Sferra Fine Linens, LLC.**

2.     The name of the real party in interest (if different than above) represented by Taft is: **N/A**.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by Taft are: **LLCP V Alternative SFERRA, LLC; SFERRA Acquisitions, LLC.**

4.     The names of all law firms and the partners or associates that appeared for the parties represented by Taft in the agency or are expected to appear in this Court and who have not or will not enter an appearance in this case are:

**Taft Stettinius & Hollister LLP: O. Joseph Balthazor, Jr. (expected to appear); Amanda Wilcox, Amy L. Wright, Elizabeth Z. Baumhart (formerly of).**

5.     The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal: **None**.

6.     Organizational Victims and Bankruptcy Cases. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in

i

criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6): **N/A.**

Dated: April 5, 2024                    TAFT STETTINIUS & HOLLISTER LLP

                                        */s/ Philip R. Bautista*
                                        Philip R. Bautista

                                        *Counsel for Appellant*
                                        *Sferra Fine Linens, LLC*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ...............................................................i

TABLE OF AUTHORITIES.....................................................v

SUMMARY OF THE ARGUMENT ......................................................1

ARGUMENT ........................................................................5

I. Appellant presented substantial evidence that it sells goods identical and related to the clothing and perfumery goods described in Appellee's Application, weighing in favor of a likelihood of confusion. ..........................5

   A. Appellant's evidence on its sales of identical and related goods is authenticated and supported by testimony ......................................................6

   B. Appellant's evidence of the parties' identical and related goods is not "sporadic." ...........................................................9

   C. Appellant provided substantial evidence that the parties' goods are related in "some manner." ......................................................11

II. Appellee concedes that the parties sell in the same channels of trade ............15

   A. Appellee concedes that the parties have the same trade channels ...............16

   B. The Board should have considered foreign evidence of Appellee's identical trade channels to those of Appellant ...........................................................17

   C. The Board should have presumed that Appellee's unrestricted goods will travel in all normal trade channels ...............................................19

III. The parties sell to the same class of consumers and Appellee fails to refute this point .......................................................................20

IV. Appellee misstates the kind of evidence that is necessary to show commercial strength of a trademark ......................................................21

V. The Board's conclusion as to likelihood of confusion was incorrect, in part because it failed to give proper weight to the impact of the parties' similar marks. ...................................................................................................23

CONCLUSION ....................................................................................................24

CERTIFICATE OF COMPLIANCE .....................................................................26

CERTIFICATE OF SERVICE...............................................................................27

ADDENDUM…………………………………………………………....…...28

# TABLE OF AUTHORITIES

## Cases

*Club Amenities, LLC, v. Pettenon Cospetici SNC,*
     2005 WL 7054527 (TTAB Nov. 29, 2005)....................................................10

*Custom Vehicles, Inc. v. Forest River, Inc.*,
     476 F.3d 481 (7th Cir. 2007).........................................................................10

*E. I. DuPont de Nemours & Co.*,
     476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973) ...................................passim

*Great Atlantic & Pacific Tea Co. v. Worden Grocer Co.*,
     55 F.2d 475 (Fed. Cir. 1932).........................................................................17

*Hewlett-Packard Co. v. Packard Press, Inc.*,
     281 F.3d 1261 (Fed. Cir. 2002)...........................................................12, 13, 19

*In re Bayer Aktiengesellschaft*,
     488 F.3d 960 (Fed. Cir. 2007)..................................................16, 17, 18, 19

*In Re King Koil Licensing Co., Inc.*,
     79 U.S.P.Q.2d 1048 (TTAB 2006) ........................................................16, 18

*In Re Well Living Lab Inc.*,
     122 U.S.P.Q.2d 1777 (TTAB 2017) ......................................................16, 18

*In re Oxiteno S.A. Industria e Comercio*,
     No. 2022-1213, 2023 WL 2422439 (Fed. Cir. Mar. 9, 2023)......................21

*In re Soc'y of Health & Physical Educators*,
     127 USPQd 1584 (TTAB 2018) ................................................................16

*In re The Newbridge Cutlery Co.,*
     776 F.3d 854 (Fed. Cir. 2015).....................................................................19

*In re Viterra Inc.*,
     671 F.3d 1358 (Fed. Cir. 2012)...................................................................17

*Juul Labs, Inc. v. 4X PODS*,
    509 F. Supp. 3d 52 (D.N.J. 2020) ....................................................................9

*L. J. Mueller Furnace Co. v. United Conditioning Corp.*,
    222 F.2d 755 (C.C.P.A. 1955) ...............................................................14, 15

*Naterra Int'l. v. Bensalem*,
    92 F.4th 1113 (Fed. Cir. 2024).......................................................4, 17, 23, 24

*Omaha Steaks Int'l, Inc. v. Greater Omaha Packing Co.*,
    908 F.3d 1315 (Fed. Cir. 2018)....................................................................22

*On-Line Careline, Inc. v. Am. Online, Inc.*,
    229 F.3d 1080 (Fed. Cir. 2000)...........................................11, 12, 13, 14, 15

*Philip Morris, Inc. v. Imperial Tobacco Co. (of Great Britain & Ireland), Ltd.*,
    251 F. Supp. 362 (E.D. Va. 1965)............................................................9, 10

*Safer, Inc. v. Oms Investments, Inc.*,
    94 U.S.P.Q.2d 1031 (T.T.A.B. 2010) ............................................................6

*Schwarzkopf v. John H. Breck, Inc.*,
    340 F.2d 978 (Fed. Cir. 1965).......................................................................17

*Stone Lion Capital Partners, L.P. v. Lion Capital LLP*,
    746 F.3d 1317 (Fed. Cir. 2014).......................................................................5

*Therma-Scan, Inc. v. Thermoscan, Inc.*,
    295 F.3d 623 (6th Cir. 2002).........................................................................14

*Tiger Lily Ventures Ltd. v. Barclays Cap. Inc.*,
    35 F.4th 1352 (Fed. Cir. 2022)...........................................................6, 11, 12

*W. Fla. Seafood, Inc. v. Jet Restaurants, Inc.*,
    31 F.3d 1122 (Fed. Cir. 1994).......................................................................11

**Statutes**

Fed. Cir. R. 32.1…………………………………………………………............16

TBMP § 101.03…………………………………………………………......16

TBMP § 702.02 ..................................................................................6

# SUMMARY OF THE ARGUMENT

In its Opening Brief, Appellant Sferra Fine Linens, LLC ("Appellant") explained in detail how the Board committed reversible error in analyzing the likelihood of confusion factors from *E. I. DuPont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973). The Board: (1) misapplied the relatedness-of-goods factor by failing to consider Appellant's evidence of the parties' similar and, in some cases, identical goods; (2) misapplied the overlap-in-trade-channels factor by ignoring relevant, foreign evidence of overlap in trade channels and failing to presume that Appellee's goods will be sold in all normal and usual trade channels; (3) incorrectly concluded that the purchaser-and-purchasing-conditions factor was neutral, despite finding that both parties sold their goods to consumers of inexpensive retail goods; and, (4) misapplied the strength-of-mark factor by rejecting Appellant's significant sales figures because, according to it, Appellant did not provide "context" for those figures. Finally, the Board (5) incorrectly found that the similarities in the two marks at issue weighed in favor of Appellant when it should have found that those similarities weighed *heavily* in Appellant's favor.

These decisions were either unsupported by substantial evidence or legally erroneous and, in the end, the Board's misapplication and incorrect weighting of these factors led it to incorrectly find that no likelihood of confusion existed between the parties' marks. The Board's decision should be reversed.

In its Response Brief, Appellee parrots the Board's decision but offers few citations to the record or case law for its sweeping legal arguments. Just like the Board's decision, Appellee's arguments fail to properly analyze the likelihood of confusion factors.

*First*, regarding the relatedness of the parties' goods, Appellee's Brief provides the conclusory and incorrect assertion that the record lacks documents and witness testimony on this factor. Unsurprisingly, Appellee attempts to gloss over the substantial evidence of scarves, robes, diffusers, and candles that Appellant has sold, all of which are related to or identical to those in Appellee's Application.[1] Appellant properly authenticated and supported its evidence on the sale of those goods with testimony from two of its corporate representatives, contrary to Appellee's repeated assertions to the contrary in its Brief. This factor weighs in favor of a likelihood of confusion finding, contrary to Appellee's assertion and the Board's finding.

*Second*, Appellee *outright concedes* in its Brief that the parties sell their goods in the same channels of trade—online, in retail stores, and in department stores. In an attempt to avoid the similarities of the parties' trade channels and despite its concession, Appellee's Brief misstates this Court's precedent on the relevance of

---

[1] Appellant has also asserted common law rights for its SFERRA mark. (Appx14-15 (noting Appellant asserted those rights in scarves, robes, diffusers, and candles)). For this reason, comparing goods identified in the Application and goods not identified in Appellant's registration is appropriate.

foreign evidence on trade channels to argue that its foreign trade channels are irrelevant, merely parroting the Board. But foreign evidence *is* relevant on a case-by-case basis and the Board erred in failing to consider Appellee's trade channels abroad. Appellee's concession on the similarities of the parties' trade channels make this clear, as does the fact that Appellee has yet to make a sale in this country. In other words, evidence of its trade channels abroad is the *only* evidence of its current trade channels. As a self-inflicted final blow, Appellee repeats another Board error by erroneously arguing that the presumption on the similarities of the parties' trade channels, based upon the lack of restrictions in its Application, does not apply. This factor also weighs in favor of a likelihood of confusion finding, contrary to Appellee's assertion and the Board's finding.

*Third*, regarding the similarities in the parties' consumers, Appellee does not address head-on the fact that both parties sell inexpensive retail goods. Unable to refute the parties' overlapping consumers for inexpensive goods, Appellee instead focuses on Appellant's sales of luxury goods so as to distract from the parties' overlapping consumers. Appellee's red herring argument—*i.e.*, that confusion is unlikely because not *all* of the parties' consumers overlap, even if some do—does not moot the parties' shared consumers of inexpensive goods. This factor also weighs in favor of a likelihood of confusion finding, contrary to Appellee's assertions and the Board's finding.

3

*Fourth,* regarding the commercial strength of the Appellant's registered trademark for SFERRA, (the "SFERRA Mark"), Appellant again merely restates the Board's error in its Brief, misapplying this Court's precedent on the kind of evidence required to prove this factor. Appellee erroneously argues that Appellant was required to provide third-party evidence relating to its sales, and that the lack of such evidence weakens the probative value of Appellant's significant sales. But this Court has instructed that such evidence is not necessary and Appellant has proven the commercial strength of the SFERRA Mark consistent with the Court's precedent, through sales figures and marketing materials, such as magazine coverage and social media pages. This factor also weighs in favor of a likelihood of confusion finding, contrary to Appellee's assertions and the Board's finding.

Finally, this Court's recent decision in *Naterra Int'l. v. Bensalem*, 92 F.4th 1113 (Fed. Cir. 2024), issued after the filing of Appellant's Opening Brief, confirms that the Board's overall weighing of the likelihood of confusion factors was in error. The Board should have found that the similarity of the parties' marks—SFERRA versus SFERA—weighed *heavil*y in favor of confusion, given its finding, as in *Naterra*, that the marks were "more similar than dissimilar." As *Naterra* shows, the Board also should have weighed whether its finding of a similarity between the parties' marks is dispositive by itself, as against the other relevant *DuPont* factors. The Board's failure to do so infects its final decision that no likelihood of confusion

exists and requires reversal for reconsideration, even if the Board had not already misapplied the above referenced additional factors.

In short, Appellee's Brief falls victim to the same errors as the Board's decision. As a result, Appellee's Brief erroneously arrives at the same incorrect conclusion as did the Board—that consumers are unlikely to be confused by Appellant's use of SFERRA and Appellee's use of SFERA. As more fully explained below and in Appellant's Opening Brief, the Board's decision should be reversed and this Court should find that a likelihood of confusion exists. In the alternative, this case should be remanded for consideration consistent with a proper application of the likelihood of confusion factors, as more fully explained below.

## ARGUMENT

I.  **Appellant presented substantial evidence[2] that it sells goods identical and related to the clothing and perfumery goods described in Appellee's Application, weighing in favor of a likelihood of confusion.**

Appellee's Application recites "[p]erfumery, namely, perfume . . . [and] scented water" under International Class (IC) 03 and "[c]lothing, namely . . scarves . . ." under IC 025. (Appx51-52). Appellant introduced, through proper declarations of its CEO and President and its Vice President of brand development, substantial and ***unrebutted*** evidence and testimony of its sales of ***identical*** retail goods—

---

[2] Evidence is "substantial" if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Stone Lion Capital Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 1321 (Fed. Cir. 2014).

scarves (Appx96-97, Appx404-405). Appellant also introduced evidence of its sale of related goods, such as robes (Appx171-172, Appx193, Appx355, Appx408, Appx573, Appx723, Appx766 Appx1370), and diffusers. (Appx460-461, Appx523-524). *See* (Doc. No. 18 at 20-27). This substantial evidence demonstrates that the parties' retail goods are related in "some manner" which could give rise to the mistaken belief that they emanate from same source. *Id.* at 25-26; *Tiger Lily Ventures Ltd. v. Barclays Cap. Inc.*, 35 F.4th 1352, 1363 (Fed. Cir. 2022).

Appellee's arguments against the relatedness of the parties' goods appear to be: (1) Appellant did not submit evidence in the way of testimony on relatedness (Doc. 23 at 26, 28-29); (2) even if Appellant had done so, that evidence does not show prior use because it is "sporadic" (*id.* at 28); and, (3) the evidence does not show relatedness, in any event. (*id.* at 30-34). Appellee is mistaken both on the record and the law.

### A.    Appellant's evidence on its sales of identical and related goods is authenticated and supported by testimony.

As Appellee acknowledges (Doc. 23 at 24) and as the Board explained (Appx11 n.8), documents and exhibits such as internet materials can be introduced through declaration testimony. *See* TBMP § 702.02 (providing that a party to an opposition proceeding may introduce and authenticate "[d]ocuments and other exhibits" by introducing that evidence through a witness "in a testimony affidavit or declaration"); *Safer, Inc. v. Oms Investments, Inc.*, 94 U.S.P.Q.2d 1031 (T.T.A.B.

2010) (discussing introducing internet evidence). Appellee contends that Appellant did not submit testimony to support its evidence on the parties' identical and related goods. (Doc. 23 at 26, 28-29).

Appellee is simply incorrect. As stated above, Appellant introduced evidence of the parties' identical and related goods supported by the declaration testimony of Appellant's President and CEO (Appx 95) and Vice President responsible for brand development and business expansion (Appx 106). These witnesses testified that:

> While the ownership of the company and the SFERRA BROS. and SFERRA trademarks have changed hands several times, the trademarks have been used continuously by these owners. Attached are true and correct copies of historical and current marketing materials that demonstrate the history of the brand and the historical use in the possession of Sferra as business records attached as Exhibits 2-5, which include Bates Nos. SFERRA FINE LINENS_0000001-5; 7-8; 11-13; 93-95; *97-130*; *132-139*; 141-143; 146-147; *150-167*; 2601-6; 2620-5; 2631-5; 2637-44; 2649-53; 2702-12; 2716-34; 2745-56; 2782-6; 2799-2802; 2805-08; 2845-50; 2861-6; 2877-84; 2974-81; *3598-3778*.

(Appx96-97 ¶ 8, Appx107-108 ¶ 8) (emphasis added as to Bates-stamped documents included within Appendix).[3] Indeed, the testimony of Appellant's witnesses authenticates and establishes sales *since 2003*. *See* Appx100 ¶ 17, ("Since at least as early as 2003, Sferra and its predecessors in interest have continuously sold the SFERRA Goods on its website to consumers nationwide."); Appx110 ¶ 17 (same).

---

[3] Appellee argues that website evidence is inadmissible hearsay, Doc. 23 at 24-25, but even the Board acknowledged that website evidence is not hearsay if "supported by witness testimony." Appx 11 n.8.

Moreover, these witnesses also testified on the price ranges at which these identical and related products are sold, further substantiating their sale:

- "Scarves: $144-$419 (SFERRA FINE LINENS_0003650-3652)";

- "Bath Robes: $85-$1,275 (SFERRA FINE LINENS_0003601-03; 3653-57)"; and

- "Diffusers: $198 (SFERRA FINE LINENS_0003769-3771)."

*See* (Appx101-102 ¶ 23, Appx112-113 ¶ 23) (emphasis added). Appellant's witnesses also testified that Appellant *sells* the goods on a provided price list, refuting Appellee's assertion argument that a price list alone does not evidence sales. (*See* Appx96-97 ¶ 8, Appx98 ¶ 13, Appx 101-102 ¶ 23, Appx107-108 ¶ 8, Appx109 ¶ 13, Appx112-113 ¶ 23). Appellant provided evidence of all of its sales through the testimony of its two witnesses and the exhibits on which they testified.[4]

Collectively, these documents show sales of scarves since 2021 (Appx404-405), robes[5] and related embroidering services since 1988 (Appx172, Appx355) and

---

[4] *See* for scarves, Appx404-405, Bates ending in -3561-62. For robes, Appx171-172, Bates ending in -132; Appx193, Bates ending in -108; Appx355, Bates ending in -3602; Appx408, Bates ending in -3655; Appx573, Bates ending in -455; Appx723, Bates ending in -3547; Appx766, Bates ending in -3590; Appx1370, Bates ending in -161. For diffusers, Appx460-461, Bates ending in -3707-08. *See* Appx96-97 ¶ 8, Appx98 ¶ 13, Appx 101-102 ¶ 23, Appx107-108 ¶ 8, Appx109 ¶ 13, Appx112-113 ¶ 23 (declaration testimony introducing this evidence).

[5] Appellee also makes several other attacks at Appellant's evidence as not showing use, but Appellee does not cite any case law for its sweeping arguments (Doc. 23 at 27-28). Appellant's website, catalogue, and social media evidence all bear

candles and diffusers since 2021 (Appx461). Appellee's assertion that Appellant's evidence on these identical and related goods ". . . was submitted without any testimony and underlying evidence" is incorrect and should be rejected.

### B.     Appellant's evidence of the parties' identical and related goods is not "sporadic."

Appellee also contends that this evidence is sporadic and de minimis, such that it does not demonstrate "continuous use." (Doc. 23 at 28). In making this erroneous assertion, Appellee relies upon two inapplicable and easily distinguishable cases. The first is an almost sixty-year-old opinion from the United States District Court for the Eastern District of Virginia, *Philip Morris, Inc. v. Imperial Tobacco Co. (of Great Britain & Ireland), Ltd.*, 251 F. Supp. 362, 379 (E.D. Va. 1965)

---

Appellant's SFERRA Mark which, coupled with two witnesses testifying as to continuous use of the mark, refutes this contention. Moreover, to the extent Appellee asserts that "robe" as a hashtag does not show use (Doc. 23 at 28), its argument reveals a lack of understanding of modern technology as hashtags are social media marketing tools. *Juul Labs, Inc. v. 4X PODS*, 509 F. Supp. 3d 52, 70 (D.N.J. 2020) (explaining purpose of hashtags as having a social media "indexing and cataloguing function" that "provide[s] a way to link individual posts to larger topics and conversations," and collecting cases involving infringing uses of trademarks in hashtags). In this context, #robe seeks to cast a wider net of potential consumers as a *marketing tool*. *See* (Appx96-97 ¶ 8, Appx98 ¶ 13, Appx 101-102 ¶ 23, Appx107-108 ¶ 8, Appx109 ¶ 13, Appx112-113 ¶ 23) (testifying as to Appellant's marketing methods); *see also* (Appx573, Appx723, Appx766 (social media evidence). Appellee also makes other sweeping statements such as its contention that Appellant's social media marketing evidence uses statements that are "very convoluted and mixed with several other expressions and, thus are imperceptible and difficult to read…" (Doc. 28). As with its other arguments, Appellee ***neither cites to any actual statements*** that it "cannot read or understand" nor supports this argument with evidence or citations to authority.

(subsequent history omitted). In *Philip Morris,* the court found that a party made only "casual and nominal" shipments of cigarettes bearing the subject mark. 251 F. Supp. at 379. The second case, *Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 485 (7th Cir. 2007), confronted whether the sale of a ***single van*** was sufficient to establish use. Neither case applies, here.

As described above, Appellant introduced substantial evidence—not "casual" or "nominal" sales— in the form of internet offers for sale, social media marketing, and catalogues showing use for scarves, candles, and diffusers since 2021 (Appx 404-405, Appx460) and robes and related embroidery services since 1988 (Appx172), 2009 (Appx766), 2012 (Appx723), 2016 (Appx1360, Appx1370), and 2021 (Appx355, Appx408). Further, Appellant's witnesses testified by way of declaration to Appellant's continuous use of its marks. Contrary to what Appellee appears to be arguing without citation to any authority, Appellant is not required to introduce evidence of use "for every day, month, or year…" *Club Amenities, LLC, v. Pettenon Cospetici SNC*, 2005 WL 7054527, at *3 (TTAB Nov. 29, 2005).

Moreover, and more to the point, Appellant's evidence of internet offers for sale of scarves, robes, diffusers, and candles on websites, social media marketing, and catalogues is "such relevant evidence as a reasonable mind would accept" as showing the parties' goods are related in "some manner" or "the circumstances surrounding their marketing are such that they could give rise to the mistaken belief

that they emanate from the same source." *Tiger Lily*, 35 F.4th at 1363; *see On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1086 (Fed. Cir. 2000) (finding relatedness based in part on one party offering the goods of both).

To the extent Appellee is asserting that Appellant somehow abandoned its use of these identical or related goods by claiming that the sales were "sporadic" (Doc. 23 at 28), "the party asserting abandonment bears at a minimum a burden of coming forth with some evidence of abandonment." *W. Fla. Seafood, Inc. v. Jet Restaurants, Inc.*, 31 F.3d 1122, 1128–29 (Fed. Cir. 1994). As an initial matter, Appellee never asserted abandonment as an affirmative defense in its Answer (Appx88-92) and, regardless, it failed to meet the heavy burden to prove abandonment by proving that Appellant abandoned use of its mark with scarves, robes, or diffusers. Indeed, Appellee has submitted *no evidence* in support of any of its opposition to Appellant's arguments.

### C.     Appellant provided substantial evidence that the parties' goods are related in "some manner."

As shown above, Appellant submitted substantial and authenticated evidence that it has offered scarves (identified in Appellee's application) for sale since 2021. (Appx404-405). And Appellant's authenticated evidence of record further demonstrates that it has offered goods that are related to the clothing and perfumery identified in Appellee's application, such as robes (Appx171-172, Appx193, Appx355, Appx408, Appx573, Appx723, Appx766, Appx1370) and candles and

diffusers (Appx460-461, Appx523-524). The testimony of Appellant's witnesses confirms the sales of these products. (*See* Appx96-97 ¶ 8, Appx98 ¶ 13, Appx100 ¶ 17, Appx 101-102 ¶ 23, Appx107-108 ¶ 8, Appx109 ¶ 13, Appx112-113 ¶ 23). All of this evidence shows conclusively that a single company—Appellant—sells the types of goods sold by each of the parties. As Appellant explained in its Opening Brief, that type of evidence is relevant to show relatedness. *See* (Doc. 18); *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1267 (Fed. Cir. 2002); *On-Line Careline*, 229 F.3d at 1086.

While Appellee argues at length that the Board should focus solely on the goods identified in the registrations and Application (Doc. 23 at 29-30), Appellant has done so. Appellee fails to understand the purpose for which Appellant introduced the evidence of robes and diffusers and candles—that is, to satisfy the relatedness standard and to show that "the respective products are related in some manner and/or . . . the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that they emanate from the same source." *Tiger Lily Ventures*, 35 F.4th at 1363.

Having failed to submit any evidence of its own to counter Appellant's evidence on the parties' identical and related goods, Appellee accuses Appellant of

misquoting and misapplying *Hewlett-Packard*, 281 F.3d at 1267.[6] (Doc. 23 at 32).

But *Hewlett-Packard* straightforwardly acknowledges the relevance of Appellant's

sale of its goods when determining relatedness:

> While additional evidence, such as ***whether a single company sells the goods and services of both parties, if presented, is relevant to a relatedness analysis***, the Board did not consider the important evidence already before it, namely the ITU application and HP's registrations.

281 F.3d at 1267 (emphasis added).

Appellee's attempts to distinguish *On-Line Careline*, 229 F.3d at 1086, fare

no better. Appellee attempts to contrast *On-Line Careline* with this case because it

involved testimony provided by the parties (Doc. 23 at 33) but—as discussed

above—Appellant *did* submit testimony to support its sales. (Doc. 18 at 23). And

Appellee's attempt to contrast *On-Line Careline* by arguing that, in that case, "the

services associated with both marks are related to the use of the Internet" (Doc. 23

---

[6] Appellee argues, without pointing to any evidence, that the parties goods are "completely different in terms of their type, contents, and presentation." Doc. 23 at 20. Appellee does not explain using record evidence how the parties' goods are "completely different in terms of their type, contents, and presentation." *Id.* Rather, Appellee asserts, without citing the record or caselaw, that "consumers looking to buy the goods under Applicant's mark (e.g., lotions, creams leather handbags, and coats) . . . are not the same looking to buy luxury towels, sheets, and linens." Appellee likewise asserts that the goods are in different industries, but Appellee does not identify what those different industries are or point to record evidence establishing those differences. *Id.* That is because Appellee did not supply any evidence to support these statements in the trial below. Because every such argument is unsupported by the record or any case law, the court may set them aside.

at 33) also fails because the parties in this case likewise both offer retail consumer goods *on the internet*, as Appellant concedes. *See* (Doc. 23 at 20).[7]

Appellee also relies heavily on a non-binding case, *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 633 (6th Cir. 2002), as "significant precedent" showing "similar marks were allowed to coexist despite offering goods within the same industry." (Doc. 23 at 18-19). First, Appellee overstates the court's statement of law. *See Therma-Scan*, 295 F.3d at 622 ("Goods or services are *not necessarily* related, however, simply because they coexist in the same *broad* industry.") (emphasis added) (quotation omitted). Even more importantly, Appellee misses a key distinguishing characteristic of that case: unlike the parties in this case, the parties in *Therma-Scan* "market[ed] their goods and services to *different segments of the population*," such that they "d[id] not compete in the marketplace," *see id.* Here, however, Appellant concedes (Doc. 23 at 20) that the parties sell to the same segments of the population: consumers who purchase retail consumer goods.

Similarly, and just as unpersuasively, Appellee relies heavily on *L. J. Mueller Furnace Co. v. United Conditioning Corp.*, 222 F.2d 755 (C.C.P.A. 1955), for the proposition that Appellant failed to submit evidence establishing "that the purchasing public would mistakenly assume that Appellee's identified goods

---

[7] Appellee is conflating relatedness and trade channels, but the concession that the parties both offer retail goods is relevant to relatedness. *On-Line Careline*, 229 F.3d at 1086.

originate with, are sponsored by, or are in some way associated with" Appellant's registrations or common law trademarks. (Doc. 23 at 21). Appellee's reliance on *L. J. Mueller* is misplaced because in that case, the deciding factor analyzed by the Court was the *dissimilarity* of the marks—CLIME-MATIC versus MUELLER CLIMATROL. Regardless, Appellant *did* submit evidence via declaration testimony. (Appx96-97 ¶ 8, Appx98 ¶ 13, Appx 101-102 ¶ 23, Appx107-108 ¶ 8, Appx109 ¶ 13, Appx112-113 ¶ 23).

The Board should have found that that this likelihood of confusion factor favored Appellant because consumers could believe the parties' goods emanate from the same source. *On-Line Careline*, 229 F.3d at 1086 (affirming Board's relatedness finding where the parties' goods "have been shown to be available from a single source," namely, the trademark owner). The Board's ruling on this factor should be reversed.

## II.    Appellee concedes that the parties sell in the same channels of trade.

In its Opening Brief, Appellant established that the parties share the same trade channels through Appellee's sales on the internet and in retail stores outside of the United States. (Doc. 18 at 31-32). Appellant also established (*id.* at 23) that foreign evidence of Appellee's trade channels is relevant, despite the Board's

improper refusal to consider it.[8] (*See* Appx15). Finally, Appellant illustrated how the Board failed to presume that Appellee's goods will travel in all normal channels of trade, including retail stores and on the internet, due to the unrestricted trade channels for the goods in Appellee's Application. (Doc. 23 at 33-36). Appellee's Brief fails to refute these arguments.

## A. Appellee concedes that the parties have the same trade channels.

As an initial matter, Appellee *concedes* in its Brief that it offers its goods in the same internet, department store, and retail outlet trade channels as Appellant: "The mere fact that the *parties' goods, in general terms, may be sold on the internet, department stores and other retail outlets* does not mean that they are identical or closely related or that they cannot coexist." *See* (Doc. 23 at 20). Appellee makes this

---

[8] Appellant cited several cases in support of this proposition, (Doc. 18 at 28) (citing *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 969 (Fed. Cir. 2007); *In Re Well Living Lab Inc.*, 122 U.S.P.Q.2d 1777 n.3 (TTAB 2017); *In Re King Koil Licensing Co., Inc.*, 79 U.S.P.Q.2d 1048 (TTAB 2006), so Appellee's contention that "Appellant did not cite any valid, applicable legal precedent in support thereof" (Doc. 23 at 35) is incorrect. To the extent Appellee also criticizes Appellant's citations to unpublished cases from the TTAB, unpublished cases may be cited for their persuasive value. *See* TBMP § 101.03 (providing that "although a [Board] decision or order designated as not precedential is not binding upon the Board" it "may be cited for whatever persuasive value it might have"); Fed. Cir. R. 32.1(d) (providing that "[t]he court may refer to a nonprecedential or unpublished disposition in an opinion or order and may look to a nonprecedential or unpublished disposition for guidance or persuasive reasoning but will not give one of its own nonprecedential dispositions the effect of binding precedent"); *In re Soc'y of Health & Physical Educators*, 127 USPQ2d 1584, 1587 n.7 (TTAB 2018) ("Board decisions which are not designated as precedent are not binding on the Board, but may be cited and considered for whatever persuasive value they may hold.").

concession several other times in its Brief. *Id.* at 21, 35. This concession ends the inquiry on this factor—the parties have the same trade channels. *See also Naterra Int'l, Inc. v. Bensalem*, 92 F.4th 1113, 1117 (Fed. Cir. 2024) (acknowledging opposing counsel's concession as to relevancy of relatedness evidence); *In re Viterra Inc.*, 671 F.3d 1358, 1362 (Fed. Cir. 2012) (stating the only factor the court needed to address was similarity of the marks when applicant conceded the goods were identical and neither party presented arguments to any other *DuPont* factor); *Schwarzkopf v. John H. Breck, Inc.*, 340 F.2d 978, 979-80 (Fed. Cir. 1965) (stating the "sole issue" was the similarity in appearance of the marks where "Appellee's brief concedes that the products of the parties would be sold in the same channels of trade to the same class of purchasers"); *Great Atlantic & Pacific Tea Co. v. Worden Grocer Co.*, 55 F.2d 475, 476 (Fed. Cir. 1932) (stating the court "need not further consider" validity of appellee's registration because appellant conceded in its brief that validity was not an issue). The Board's decision that this factor did not weigh in favor of a likelihood of confusion should be reversed on this concession alone.

**B.    The Board should have considered foreign evidence of Appellee's identical trade channels to those of Appellant.**

As conceded in Appellee's Brief (Doc. 23 at 36-39), this Court and the Board analyze the probative value of foreign evidence on a case-by-case basis. *In re Bayer,*

488 F.3d 960, 969 (Fed. Cir. 2007).[9] And, as set forth in Appellant's Opening Brief, this case presents an obvious, common sense situation when foreign evidence on trade channels must be considered. (Doc. 18 at 30, 33). Yet, the Board refused to consider evidence of Appellee's internet and retail store trade channels, even though Appellee filed an *intent to use* application *in the United States* and thus has no other trade channels for comparison. In other words, Appellee's only trade channels are foreign, so those trade channels should have been considered. (Appx15). The fact that Appellee *has now admitted* that its foreign trade channels are similar to those of Appellant in the United States further highlights the Board's error and the need for a common sense application of *In re Bayer*. (Doc. 23 at 20, 21, 35).

Appellee's Brief attempts to narrow the situations where foreign evidence should be considered, asserting incorrectly that *In re Bayer* only applies to foreign evidence regarding the meaning of a term and otherwise citing to other authority that does not support its assertion. (Doc. 23 at 35-37). The cases cited by Appellee do not discuss, let alone, support, Appellee's narrow application of *In re Bayer* and Appellee does not otherwise provide an explanation for why its own *admitted* use of the internet, retail stores, and retail outlets should not be relevant under *In re Bayer*. *See generally id.* To the extent Appellee relies upon "negative treatment" of *In re*

---

[9] *Accord In Re Well Living Lab Inc*., 122 U.S.P.Q.2d 1777 n.3 (TTAB 2017); *In Re King Koil Licensing Co., Inc.*, 79 U.S.P.Q.2d 1048 (TTAB 2006).

*Bayer* in *In re The Newbridge Cutlery Co.* 776 F.3d 854, 863 (Fed. Cir. 2015)(Doc.

23 at 36), that case actually acknowledges *In Re Bayer*'s holding.

Appellant submitted evidence of its trade channels (Appx100 ¶ 19, Appx111

¶ 19, Appx239-359, Appx364-377, Appx389-392, Appx398-418, Appx427-488,

Appx502-505, Appx517-524, Appx529-531, Appx537-540, Appx909-911; Appx99

¶ 16, Appx110 ¶ 16, Appx476, Appx916-996, Appx1014-1031). The record also

contains evidence of Appellee's similar website and retail trade channels (Appx114

¶¶ 28-29, Appx113 ¶ 26, Appx114 ¶¶ 28-30, Appx1037, Appx1038-1045,

Appx1227-1270, Appx1272-1280).[10] And Appellee has *conceded* that these trade

channels overlap. (Doc. 23 at 20, 21, 35). In short, this factor should have been found

to weigh heavily in Appellant's favor, but for the Board's erroneous application of

the law regarding the relevance of foreign use.

### C. The Board should have presumed that Appellee's unrestricted goods will travel in all normal trade channels.

As set forth in Appellant's Brief, the Board erroneously failed to apply the

presumption that goods broadly described in an application—such as the Application

here—are presumed to travel in all normal channels of trade. In doing so, the Board

---

[10] As stated above, Appellant's CEO and President and its Vice President testified on the substance of these exhibits and what they show on their face, as applicable. (Appx96-97 ¶ 8, Appx98 ¶ 13, Appx 101-102 ¶ 23, Appx107-108 ¶ 8, Appx109 ¶ 13, Appx112-113 ¶ 23).

incorrectly found for Appellee on this factor. *See* Doc. 18 at 33-36. Appellee does not dispute that such a presumption exists. Rather, it contends, as the Board erroneously did (Appx16), that the presumption only applies if the goods are identical. (Doc. 23 at 40-41). In addition to the reasons set forth in Appellant's Opening Brief as to why this presumption applies, Appellee fails even to address its broadly described goods and its Application's failure to restrict trade channels (*id.*), both of which illustrate exactly why the presumption applies.

The Board's decision that this factor did not support a likelihood of confusion should be reversed for this additional, independent reason.

## III.   The parties sell to the same class of consumers and Appellee fails to refute this point.

Regarding the class-of-purchaser factor, the record contains substantial evidence of basic, inexpensive goods, like scarves, robes, candles, and diffusers, as stated above. (*See* Appx171-172, Appx193, Appx355, Appx404-405, Appx408, Appx460-461, Appx504, Appx523-524, Appx573, Appx723, Appx766; Appx99 ¶ 16, Appx110 ¶ 16, Appx476, Appx916-996, Appx1014-1031; Appx114 ¶¶ 28-29, Appx113 ¶ 26, Appx114 ¶¶ 28-30, Appx1037, Appx1038-1045, Appx1227-1270, Appx1272-1280). These types of inexpensive goods were likewise listed in Appellee's Application. These overlapping goods demonstrate that the parties will have an overlap of consumers.

In its Brief, Appellee avoids any discussion on these overlapping inexpensive

goods or the customers purchasing those goods. Appellee also avoids any discussion of the authority cited in Appellant's Opening Brief, which demonstrates that, because the parties' registrations and applications lack restrictions as to consumers, their consumers are presumed to overlap. (Doc. 18 at 37-38). Appellee resorts only to the red herring argument that Appellant *also* sells luxury goods. (Doc. 23 at 43-44). But Appellee fails to cite to any authority that would support its view that two parties must *only* sell the exact same type of goods, and no others, in order for this factor to weigh in favor of a likelihood of confusion. *See In re Oxiteno S.A. Industria e Comercio*, No. 2022-1213, 2023 WL 2422439, at *3 (Fed. Cir. Mar. 9, 2023) (affirming Board finding of likelihood of confusion and finding that substantial evidence supported finding on consumer overlap where "at least some of the consumers would be the same" even where other buyers of those parties' products may be different).

The class of purchaser factor also weighs in favor of a likelihood of confusion finding and the Board's finding of this factor as neutral should be reversed.

**IV.    Appellee misstates the kind of evidence that is necessary to show commercial strength of a trademark.**

As acknowledged by the Board, Appellant has had significant sales of its goods, demonstrating the strength, or "fame" of the SFERRA Mark. (Appx11-12). Appellant also submitted evidence of its advertising through declarations and representative samples of its advertisements from the 1980's through present.

(Appx159-179, Appx100-101). But contrary to the Board's decision, Appellant did not need to bolster this evidence with evidence of its market share in order to prove the commercial strength of the SFERRA MARK, as recognized in *Omaha Steaks Int'l, Inc. v. Greater Omaha Packing Co.*, 908 F.3d 1315, 1321 (Fed. Cir. 2018) (Doc. 18 at 39-41). The Board's decision below thus misapplied *Omaha Steaks*.[11]

In it Brief, Appellee does not dispute Appellant's sales evidence or its reading of *Omaha Steaks*. Instead, Appellant's argument against the strength of the SFERRA Mark merely parrots the Board's erroneous requirement for market share "context," to argue against the commercial strength of the SFERRA Mark. Appellee provides no further analysis or authority in support of that improper conclusion. (Doc. 23 at 45-47).

The substantial evidence of Appellant's sales figures should weigh heavily in favor of a finding of likelihood of confusion. The Court should reverse the Board's finding to the contrary or, at a minimum, remand so as to allow the Board to conduct a proper analysis of this factor.

---

[11] The Board discounted that evidence due to lack of evidence on "other brands of linens and related products." (Appx10). The record fits neatly into this Court's conclusion in *Omaha Steaks*. *See* 908 F.3d at 1321 ("Based on this undisputed record, the Board's conclusion that [Appellant] did not provide any context for its 'raw' sales figures and ad expenditures lacks substantial evidence.").

**V.    The Board's conclusion as to likelihood of confusion was incorrect, in part because it failed to give proper weight to the impact of the parties' similar marks.**

The Board found that the parties' marks, SFERRA and SFERA, were similar (Appx13) and Appellee *concedes* that the marks are similar in its Response Brief. (Doc. 23 at 13 ("[a]s the Board correctly stated…confusion is unlikely notwithstanding that the marks are similar"). As supported by a recent decision from this Court issued after Appellant filed its Opening Brief, *Naterra Int'l. v. Bensalem*, 92 F.4th 1113 (Fed. Cir. 2024), the Board should have weighed this factor *heavily* in favor of a likelihood of confusion finding. In fact, the word elements from the parties' marks, SFERRA and SFERA, differ by only one letter and are even more similar in appearance, sound, and connotation than the marks in *Naterra*, which involved marks differing by a plural-possessive element and an additional word element. *Naterra*, 92 F.4th at 1119. And, just like in *Naterra,* the Board below found that the SFERRA and SFERA "marks are more similar than dissimilar." *Id.*; (Appx13). As the Court in *Naterra* acknowledged, this fact alone could be dispositive against all other relevant *DuPont* factors. 92 F.4th at 1119 (vacating Board's decision finding no likelihood of confusion between BABY MAGIC and BABIES' MAGIC TEA, explaining in part that the first *DuPont* factor should have "weigh[ed] heavily in the confusion analysis" and remanding for the Board to consider whether the similarity of marks should be dispositive "after considering all

23

the relevant *DuPont* factors").

Contrary to this Court's analysis in *Naterra*, the Board's decision below did not weigh the similarities of the parties marks "***heavily***" in favor of a finding of confusion. Nor did it consider whether that weighing should be dispositive against the other relevant *DuPont* factors at issue—similarity of goods, overlap-in-trade-channels, class-of-purchasers, and strength-of-mark factors. The Board's decision should be reversed and remanded so the Board can properly weigh this factor heavily in favor of a likelihood of confusion and determine whether that new weight is dispositive of its overall analysis, especially in light of its other errors on the remaining factors it considered.

## CONCLUSION

The Board erred as a matter of law on its likelihood of confusion finding after improperly weighing numerous *DuPont* factors. The Board failed to properly weigh Appellant's evidence on the relatedness of the parties' goods, the parties' similar trade channels, the parties' similar customers and purchasing conditions, and the commercial strength of the SFERRA Mark. In addition, the Board failed to give the necessary weight to its finding that the parties' marks were similar.

Appellant respectfully requests that this Court reverse the Board's decision on *de novo* review and find a likelihood of confusion. In the alternative, the case should be remanded with instructions that the Board must reconsider its likelihood of

confusion analysis and these five *DuPont* factors, as discussed above.

Dated: April 5, 2024                    Respectfully submitted,

                              By:   */s/ Philip R. Bautista*
                                    Philip R. Bautista
                                    JoZeff W. Gebolys
                                    TAFT STETTINIUS & HOLLISTER LLP
                                    200 Public Square, Suite 3500
                                    Cleveland, Ohio 44114
                                    pbautista@taftlaw.com
                                    jgebolys@taftlaw.com
                                    (216) 241-2838

                                    *Counsel for Appellant Sferra Fine Linens, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

This Reply Memorandum complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A). The memorandum contains 5,085 words, excluding parts exempted by the Fed. R. App. P. 32(f). The word count includes the words counted by the Microsoft Word 2016 function.

This motion also complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E). The motion has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font of Times New Roman.

Dated: April 5, 2024

*/s/ Philip R. Bautista*
Philip R. Bautista

*Counsel for Appellant Sferra Fine Linens, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2024, a true and correct copy of the foregoing REPLY BRIEF OF APPELLANT was filed with the Clerk of the United States Court of Appeals for the Federal Circuit and served on all counsel of record by the Court's CM/ECF system.

*/s/ Philip R. Bautista*
Philip R. Bautista

*Counsel for Appellant Sferra Fine Linens, LLC*

132423370

27

No. 23-2198
(Opposition No. 91226943)

# United States Court of Appeals
## for the Federal Circuit

SFERRA FINE LINENS, LLC
*Appellant*

v.

SFERA JOVEN S.A.
*Appellee*

*Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board*

**ADDENDUM TO REPLY BRIEF OF APPELLANT**

Philip R. Bautista
JoZeff W. Gebolys
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114
pbautista@taftlaw.com
jgebolys@taftlaw.com
(216) 241-2838

*Counsel for Appellant Sferra Fine Linens,
LLC*

APRIL 5, 2024

28

# ADDENDUM OF APPELLANT – TABLE OF CONTENTS

*In re Oxiteno S.A. Industria e Comercio*, No. 2022-1213, 2023 WL 2422439, at *3 (Fed. Cir. Mar. 9, 2023) ..................................................................ADD1-3

*Club Amenities, LLC, v. Pettenon Cospetici SNC*, 2005 WL 7054527, at *3 (TTAB Nov. 29, 2005) ...............................................................................ADD4-7

Case: 23-2198    Document: 27    Page: 38    Filed: 04/09/2024

In re Oxiteno S.A. Industria e Comercio, Not Reported in Fed. Rptr. (2023)

2023 WL 2422439

2023 WL 2422439
Only the Westlaw citation is currently available.
United States Court of Appeals, Federal Circuit.

IN RE: OXITENO S.A. INDUSTRIA
E COMERCIO, Appellant

2022-1213
|
Decided: March 9, 2023

Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board in No. 88865509.

**Attorneys and Law Firms**

Mary Catherine Merz, Merz & Associates, PC, Oak Park, IL,
for appellant.

Christina J. Hieber, Office of the Solicitor, United States
Patent and Trademark Office, Alexandria, VA, for appellee
Katherine K. Vidal. Also represented by Mary L. Kelly,
Thomas W. Krause, Matthew Derrick McClellan, Amy J.
Nelson, Farheena Yasmeen Rasheed, Mary Beth Walker.

Before Dyk, Bryson, and Prost, Circuit Judges.

**Opinion**

Dyk, Circuit Judge.

**\*1** Appellant Oxiteno S.A. Indústria e Comércio
("Oxiteno") appeals a decision of the Trademark Trial and
Appeal Board ("Board") affirming the Examining Attorney's
refusal to register the mark OXIPURITY for various chemical
products. We *affirm*.

BACKGROUND

Oxiteno filed an intent-to-use trademark application for
the mark OXIPURITY. The description of goods, as
amended, included dozens of chemical products "for use in
the pharmaceutical, veterinary, flavour and fragrance, and
cosmetic fields." [1] J.A. 132.

The Examining Attorney refused to register the mark due
to a likelihood of confusion with a previously registered
OXYPURE mark. The OXYPURE mark, registered by FMC
Corporation, covers "hydrogen peroxide intended for use in
the treatment of public and private potable water systems and
supplies." J.A. 50 (capitalization changed). The Examining
Attorney found OXIPURITY and OXYPURE to be similar
marks, leading to a likelihood of confusion. Although the
goods covered by the earlier registration and the application
were not identical, the Examining Attorney found the goods
to be related based on thirdparty websites that marketed both
hydrogen peroxide (the goods covered by FMC's OXYPURE
mark) and one or more of the chemicals that Oxiteno sought
to be covered by the OXIPURITY mark. Oxiteno filed a
response challenging the Examining Attorney's refusal and
offering evidence in support of its position. The Examining
Attorney issued a final refusal.

Oxiteno appealed to the Board. The Board considered the
likelihood of confusion factors laid out in *Application of E.
I. DuPont DeNemours & Co.* (*DuPont*), 476 F.2d 1357, 1361
(CCPA 1973). Regarding the first *DuPont* factor, similarity
of the marks, the Board found the marks to be "similar in sound,
meaning and commercial impression." J.A. 5. Accordingly,
the Board found that this factor "strongly favors a finding of
likelihood of confusion." J.A. 7.

**\*2** The Board then considered the second and third *DuPont*
factors, the similarity of the goods and channels of trade,
and found that the goods are different but related. The Board
found that the third-party websites "establish that [Oxiteno's]
chemicals and [FMC's] hydrogen peroxide are commonly
manufactured by a single source, and are sold directly
to a variety of industries, including the waste treatment,
pharmaceutical, biotech, and personal care industries." J.A.
9–10. The Board also relied on FMC's brochure, which stated
that FMC offered other hydrogen peroxide products, albeit
under different brand names, to industries such as the drugs/
cosmetics industry.

In its consideration of the fourth *DuPont* factor, "[t]he
conditions under which and buyers to whom sales are made,
i.e. 'impulse' vs. careful, sophisticated purchasing," *DuPont*,
476 F.2d at 1361, the Board found that the nature of the goods
—chemical products used in manufacturing other products—
suggested that the consumers would be sophisticated.

The Board weighed the relevant *DuPont* factors and found
a likelihood of confusion. Although the consumers were
sophisticated, the Board found that "[t]he strong similarity of
the marks for related goods, which move in the same channels
of trade to the same classes of customers renders confusion
likely." J.A. 13.

Case: 23-2198    Document: 27    Page: 39    Filed: 04/09/2024

In re Oxiteno S.A. Industria e Comercio, Not Reported in Fed. Rptr. (2023)

2023 WL 2422439

DISCUSSION

Under the Lanham Act, the Patent and Trademark Office ("PTO") can refuse to register a mark if the mark "so resembles a mark registered in the Patent and Trademark Office ... as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). Likelihood of confusion is a legal conclusion based on underlying factual findings regarding the *DuPont* factors. *QuikTrip W., Inc. v. Weigel Stores, Inc.*, 984 F.3d 1031, 1034 (Fed. Cir. 2021). We review the Board's factual findings for substantial evidence and the weighing of the *DuPont* factors de novo. *Id.*

Oxiteno's primary contention is that the actual or potential consumers for the products covered by the application and the registration are not the same and thus there is no likelihood of confusion. The Board found that the relevant goods would be "purchased by scientists, chemists, and manufacturers." J.A. 12. Oxiteno does not dispute this finding. Instead, it argues that the scientists, chemists, and manufacturers purchasing Oxiteno's products in the pharmaceutical, veterinary, flavor and fragrance, or cosmetic fields are not the same scientists, chemists, and manufacturers purchasing FMC's hydrogen peroxide for potable water systems. Oxiteno's argument falls short for two reasons.

First, typically the inquiry focuses on "whether there is likely to be sufficient overlap of the respective purchasers of the parties' goods and services to confuse actual and potential purchasers," *Elec. Design & Sales, Inc. v. Elec. Data Sys. Corp.*, 954 F.2d 713, 716 (Fed. Cir. 1992). But it is not necessary to show that the consumers are the same to establish a likelihood of confusion. The knowledge of the actual or potential purchasers potentially leading to source confusion is not limited to knowledge generated in purchase transactions. *See* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:5 (5th ed., 2022). Though the buyers may be different, they may have overlapping knowledge due to market conditions or channels of trade such that purchasers are familiar with both products. *See In re Shell Oil Co.*, 992 F.2d 1204, 1207 (Fed. Cir. 1993) ("It is relevant to consider the degree of overlap of consumers exposed to the respective services, for ... even when goods or services are not competitive or intrinsically related, the use of identical marks can lead to the assumption that there is a common source."). Trademark law is concerned with "confusion as to source,

sponsorship, affiliation, endorsement, or connection between the applicant's goods and the owner of the registered mark," *In re Rittenhouse*, 124 F.3d 228 (Fed. Cir. 1997) (unpublished table decision) (citing 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:6 (1997)), even in the absence of consumer overlap.

**\*3** Here, even to the extent that the buyers are different, the goods are related (the second *DuPont* factor), and there is evidence that they are sold in the same channels of trade (the third *DuPont* factor). Several specialty websites sell the chemicals for which Oxiteno seeks its OXIPURITY mark as well as hydrogen peroxide, the chemical covered by FMC's registration. The fact that "a single company sells the goods and services of both parties ... is relevant to a relatedness [*DuPont* factor two] analysis." *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1267 (Fed. Cir. 2002).

Second, there is record evidence that there is consumer overlap, i.e., to some extent the same customers would purchase both Oxiteno's and FMC's goods. Seidler Chemical, a bulk chemical supplier that offers many of the chemicals for which Oxiteno seeks its OXIPURITY mark, states that "[n]early every business has a need for either purification of water for the manufacturing process, or to clean a waste stream/effluent," J.A. 125, that is, every business is a potential purchaser of hydrogen peroxide for water purification purposes. FMC's brochure states that it sells hydrogen peroxide products, albeit under different trade names, to the food processing/packaging and drugs/cosmetics industries. Thus, substantial evidence supports the conclusion that at least some of the consumers would be the same.

Oxiteno argues that, even if the same institution or manufacturer were to purchase both products, "purchasers would fall in completely different departments." Appellant's Br. 15. While evidence that purchasing occurred within different departments of the same corporation is relevant, *Elec. Design*, 954 F.2d at 717–18, there is no record evidence showing that purchasing occurs here in different departments of the same institution. Substantial evidence supports the Board's overall likelihood of confusion determination.

CONCLUSION

We have considered Oxiteno's remaining arguments and find them unpersuasive. The Board's decision is affirmed.

ADD2

Case: 23-2198   Document: 27   Page: 40   Filed: 04/09/2024

In re Oxiteno S.A. Industria e Comercio, Not Reported in Fed. Rptr. (2023)

2023 WL 2422439

**AFFIRMED**

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 2422439

## Footnotes

1    Oxiteno's full description of goods stated:

Chemical products for use in the manufacture of pharmaceuticals products, veterinary, flavour and fragrances, [and] cosmetic; chemical products namely, cetostearyl alcohol, cetyl alcohol, diethanolamine, diethylene glycol monoethyl ether, ethoxylated castor oil, fatty alcohol ethoxylated, fatty amine ethoxylates, glycerin, glyceryl monostearate, mixtures of surfactants medium-chain triglycerides, mineral oil, monoethanolamine, mpeg, nonylphenol ethoxylates, oleochemical products, petrolatum, phenoxyethanol, phosphate ester, polaxamer, polyethylene glycol, polyoxyethylene, alkyl ethers, polyoxyethylene, castor oil derivatives, polyoxyethylene, sorbitan fatty acid esters, polyoxyethylene stearates, sodium lauryl sulfate, solvents, sorbitan esters (sorbitan fatty acid esters), sorbitan esters ethoxylated, stearic acid, stearyl alcohol and triethanolamine, for use in the manufacture of additives, pharmaceutical auxiliary, emulsifier, dispersant, humectant, adjuvant and solvents; all of the aforementioned products for use in the pharmaceutical, veterinary, flavour and fragrance, and cosmetic fields.

J.A. 132.

---

**End of Document**                                           © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   ADD3   3

2005 WL 7054527 (Trademark Tr. & App. Bd.)

Trademark Trial and Appeal Board

Patent and Trademark Office (P.T.O.)

CLUB AMENITIES, LLC
v.
PETTENON COSMETICI SNC

Cancellation No. 92043178
November 29, 2005

**\*1** Before Quinn, Kuhlke and Walsh
Administrative Trademark Judges

By the Board:

This case now comes up on respondent's request (filed September 22, 2005 via certificate of mailing) for reconsideration of the Board's August 18, 2005 decision granting petitioner's motion for summary judgment on the grounds of priority and likelihood of confusion. The motion is fully briefed.

In support of its request for reconsideration, respondent argues that the Board erred by deeming moot the merits of respondent's pending motion to extend the discovery period, thereby depriving respondent of any opportunity to develop evidence through discovery depositions to refute petitioner's summary judgment contentions; that the Board erred in failing to consider respondent's equitable defense of misuse of the registration symbol; that the Board erred by improperly drawing factual inferences in favor of petitioner with its finding of prior continuous use of the mark ALTER EGO both alone and as part of a composite mark and its finding that ALTER EGO is a separable element; and that the Board erred by improperly relying on petitioner's president Jan Ellis' second declaration that was provided with petitioner's reply since respondent did not have an opportunity to address the "new facts submitted" with the second declaration. [1]

In response, petitioner argues that respondent failed to file a Rule 56(f) affidavit when responding to petitioner's motion for summary judgment and therefore respondent's arguments regarding discovery are improper; that respondent's pleading of unclean hands cannot be construed as a defense of misuse of the registration symbol since it lacks specificity; that the Board's decision was proper since no reasonable fact finder could find otherwise based on the record; and that the facts submitted with petitioner's reply were not new, and in any event, the evidence in Ms. Ellis' second declaration is not necessary "since the file wrappers tell the story."

In reply, respondent argues that there was no need for respondent to seek Rule 56(f) discovery because it had filed a motion to extend discovery prior to the motion for summary judgment; that misuse of the federal registration symbol constitutes unclean hands and the Board should have considered the defense; and that while the facts submitted in the reply may not have been new in the sense they were not previously unknown, the facts are new in the sense that they were not previously presented by petitioner in support of its motion for summary judgment.

A request for reconsideration under Trademark Rule 2.127(b) provides an opportunity for a party to point out any error the Board may have made in considering the matter initially. It is not to be a reargument of the points presented in the original motion.

**\*2** We have carefully reviewed this matter, and we find no error in our August 18, 2005 decision.

ADD4

To the extent that respondent is arguing that the Board erred by not granting its motion to extend discovery because it needed more time to discover petitioner's intent prior to the motion for summary judgment, we find this argument to be unavailing. If respondent believed it did not have ample opportunity to conduct discovery before the Board considered the propriety of summary judgment, respondent should have requested additional time for discovery under Fed. R. Civ. P. 56(f). Respondent made no such request, but rather responded on the merits. *See Ron Cauldwell Jewelry, Inc. v. Clothestime Clothes, Inc.*, 63 USPQ2d 2009 (TTAB 2002) (56(f) motion denied where opposer filed a response to the motion for summary judgment on the merits).

Moreover, respondent lost its opportunity to request Rule 56(f) discovery when it filed a consented motion to extend its time to file its response to the motion for summary judgment, thereby making any request for Rule 56(f) discovery untimely under the Trademark Rules. [2] By requesting an extension of time to file its response brief, respondent made a considered judgment that it did not need a Rule 56(f) continuance for discovery to respond to the motion for summary judgment. *See Avia Group International Inc. v. L.A. Gear California Inc.*, 853 F.2d 1557, 7 USPQ2d 1548 (Fed. Cir. 1988) (complaint that summary judgment was granted before non-moving party could take discovery unavailing where party failed to seek 56(f) protection); *Blansett Pharmacal Co. v. Carmrick Laboratories Inc.*, 25 USPQ2d 1473 (TTAB 1992) (failure to file Rule 56(f) motion creates presumption that party did not consider such discovery essential). See generally TBMP §528.06 (2d ed. rev. 2004).

Accordingly, any procedural missteps with regard to requesting Rule 56(f) discovery by respondent's experienced trademark counsel cannot be attributed to the Board. Therefore, we find no error in our decision in granting petitioner's motion for summary judgment and deeming respondent's prior filed motion to extend discovery moot.

We turn next to respondent's contention that its allegation of misuse of the registration symbol was sufficiently pled as part of its affirmative defense of unclean hands and that it was error for the Board not to consider respondent's arguments with regard to this defense.

We reject this contention. A defense of unclean hands must be clear, specific and not conclusory in nature. *See Midwest Plastic Fabricators Inc. v. Underwriters Laboratories Inc.* 5 USPQ2d 1067, 1069 (TTAB 1987). In this regard, respondent's affirmative defense of unclean hands is conclusory in that it consisted solely of the following allegation: "[P]etitioner is barred from relief under the doctrines of estoppel, acquiescence, waiver and/or unclean hands as Petitioner has known or should have known of Registrant's use of its mark for many years and has failed to object or take action at any time."

 **\*3** Thus, the Board properly found that the defense of misuse of the federal registration symbol was unpleaded inasmuch as respondent did not specifically allege any such facts for such a defense. Accordingly, we find no error in the Board's decision in not considering respondent's arguments with regard to misuse of the registration symbol inasmuch as the defense was not specifically pleaded. [3]

We turn next to respondent's contention that the Board failed to make specific factual inferences in its favor as the non-moving party.

Respondent's argument is without merit. While the Board must consider all the evidence and draw all justifiable inferences in favor of the party opposing a motion for summary judgment, the Board "'need not accept as true legal conclusions or unwarranted factual inferences"DD' of the nonmoving party. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Moreover, the Board is not obligated to make legal inferences in the non-moving party's favor, only factual ones.

Thus, while the non-moving party is entitled to all reasonable inferences from the evidence, it must first proffer facts from which drawing the inference it seeks would be reasonable. In this regard, the Board found that respondent's evidence was insufficient to raise a genuine issue. Respondent's evidence not only failed to contradict petitioner's evidence of prior continuous use but, in fact, provided further support of petitioner's evidence of prior continuous use of the ALTER EGO mark.

By claiming that the Board erred by finding that petitioner had prior continuous use of the mark ALTER EGO, respondent is suggesting that we should defer to its legal theory. This is not the law. It would be improper for the Board to make an unreasonable and unwarranted factual inference that petitioner did not have prior continuous use on the basis that petitioner did not provide, in support of its motion for summary judgment, evidence of use of the mark ALTER EGO for every day, month or year.

Because we have made the proper factual inferences in respondent's favor, and because it would be unreasonable to conclude from those facts anything other than petitioner's prior continuous use of the mark ALTER EGO, we reject respondent's contention that we erred in granting petitioner's summary judgment motion.

Lastly, we turn to respondent's contention that the Board improperly considered and relied on "new evidence" to which it was unable to reply.

In particular, respondent argues that the Board improperly relied upon the second declaration of petitioner's president Jan Ellis. Respondent also finds fault with the Board's reliance on information regarding the screen-printing of the mark on the goods and on three invoices dated from 1996.

**\*4** We reject respondent's contention. The rebuttal evidence submitted with the reply was mere confirmatory and cumulative evidence that further supported petitioner's claims of prior and continuous use of the mark ALTER EGO. [4] Accordingly, even if this evidence were not considered by the Board, we would have reached the same result.

The evidence provided by both petitioner and respondent with their main briefs was sufficient to establish, as a matter of law, that respondent had prior and continuous use of the ALTER EGO mark. In particular, Jan Ellis' first declaration in support of the motion for summary judgment established petitioner's prior and continuous use of the mark from 1993 to the present with its uncontroverted averments that petitioner has used the ALTER EGO mark since at least as early as January 1993; that petitioner continues to use the ALTER EGO mark to the present day and intends to continue using the mark in the future; that from 1993 through 1999, petitioner had approximately $2,000,000 in gross sales; and that from the date of first use until the present, the ALTER EGO mark has appeared on the labels of all of petitioner's products sold under the mark and is used on all advertising materials, price lists and petitioner's internet website. [5] These statements are corroborated by specimens of use from petitioner's prior registration for the mark ALTER EGO THE PERSONAL CARE COMPANION (Reg. No. 1864486), as well as by specimens of use for its current application for the mark ALTER EGO (application Serial No. 76539224). These specimens of use were made of record by respondent when it submitted, with its response, the complete file wrappers (including specimens) for petitioner's prior registration and pending application.

Thus, we find no error in our August 18, 2005 decision because we would have reached the same result even had we not considered the rebuttal evidence submitted by petitioner.

Accordingly, respondent's request for reconsideration is denied. The Board's decision dated August 18, 2005 stands.

### Footnotes

1     Respondent also attached with its request for reconsideration copies of invoices provided by petitioner to respondent during discovery. Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration. *See Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Therefore, these exhibits have been given no consideration inasmuch as respondent could have provided these as exhibits to its brief in response to

petitioner's motion for summary judgment. See fn. 2 at page 7 of respondent's response brief in which it states that "[d]uring discovery Petitioner produced certain invoices listing quantities of products sold; however, none conclusively establish use or continuous use of the ALTER EGO mark since 1993."

2    A request for 56(f) discovery must be filed within 30 days of the date of service of the summary judgment motion, and no extension of time will be granted to file a 56(f) motion. See Trademark Rule 2.127(e)(1).

3    Respondent was aware of the file wrapper of petitioner's previously registered mark and underlying application at the time of answer, and therefore, respondent knew or should have known of this defense at time of answer. Moreover, respondent never moved to amend its answer to specifically add this defense. In any event, even if we had considered the defense, petitioner has presented uncontroverted evidence of no intentional misuse; so, even if pled, the defense would not have changed the result herein. See second declaration of petitioner's president Jan Ellis, which in part, responded to respondent's allegation of misuse of the registration symbol.

4    The August 18, 2005 Board order stated that the invoices dated from 1996 ". . .further support the prior and continuous use of petitioner's ALTER EGO mark."

5    The Board stated that "the advertisements, price lists and invoices establish use of the mark ALTER EGO alone as well as use of the mark ALTER EGO THE PERSONAL CARE COMPANION. With respect to petitioner's use of the mark ALTER EGO THE PERSONAL CARE COMPANION, the terms ALTER EGO are in large type and more prominently displayed than the terms THE PERSONAL CARE COMPANION." August 18, 2005 Board order at 11.

2005 WL 7054527 (Trademark Tr. & App. Bd.)

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.   ADD7