NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SFERRA FINE LINENS, LLC,**
*Appellant*

**v.**

**SFERA JOVEN S.A.,**
*Appellee*

---

2023-2198

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91226943.

---

Decided: May 19, 2025

---

PHILIP BAUTISTA, Taft Stettinius & Hollister LLP, Cleveland, OH, argued for appellant. Also represented by JOZEFF W. GEBOLYS.

SAMUEL F. PAMIAS, Hoglund & Pamias, P.S.C., San Juan, PR, argued for appellee.

---

Before LOURIE, CHEN, and HUGHES, *Circuit Judges*.

CHEN, *Circuit Judge*.

Sferra Fine Linens, LLC (Opposer) appeals from a Trademark Trial and Appeal Board (Board) decision dismissing its opposition to a trademark application filed by Sfera Joven S.A. (Applicant). *Sferra Fine Linens, LLC v. Sfera Joven S.A.*, No. 91226943, 2023 WL 3561719 (T.T.A.B. May 18, 2023) (*Decision*). The Board determined that Opposer failed to show, by a preponderance of the evidence, the existence of a likelihood of confusion between Applicant's mark and Opposer's marks. *Id.* at *9. For the following reasons, we *vacate* and *remand*.

BACKGROUND

Applicant filed an intent-to-use trademark application (U.S. Trademark Application Serial No. 86/478809) on December 12, 2014, for registration on the Principal Register of the stylized mark:

( Sfera )

J.A. 51–57[1] Applicant explained in its application that "[t]he mark consists of the word Sfera written between parentheses, the left parenthesis appearing slightly above and the right parenthesis slightly below the word." J.A. 55.

Applicant represented that it "has a bona fide intention to use the mark in commerce on or in connection with" the following goods: "[p]erfumery, namely, perfume, toilet

---

[1] Applicant filed under Section 44(e) of the Lanham Act, 15 U.S.C. § 1126(e), which is available for foreign applicants relying on ownership of foreign registrations as a basis for registration in the United States. Applicant's mark is based on European Union Registration No. 4563541. *See* J.A. 51–53.

water, scented water, cologne, essential oils for personal use, cosmetics, namely, body, face and skin moisturizing creams, lotions and tonics," in International Class 3; "[l]eather handbags, imitation leather sold in bulk; umbrellas, parasols, walking sticks, whips and harness; billfolds and wallets made of leather," in International Class 18; and "[c]lothing, namely, suits, coats, raincoats, pants, dresses, shirts, sweaters, stocking, scarves, shoes, slippers, boots; gloves and hats," in International Class 25. J.A. 55–56. In October 2015, the United States Patent and Trademark Office issued a Notice of Publication for Applicant's mark, and the mark was published in the Trademark Official Gazette in November 2015. J.A. 21.

Opposer filed a Notice of Opposition in March 2016, alleging, among other grounds, a likelihood of confusion between its marks and Applicant's mark under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d). J.A. 68–70. Opposer has applied for and maintained registration of two marks on the Principal Register—SFERRA[2] and SFERRA BROS.[3]—both for "table linen; table linen, namely, tablecloths not of paper, coasters, table mats not of paper, napkins, placemats, table runners; bed linen, bed sheets, bedspreads, pillow cases, pillow covers, pillow shams, duvet covers, blankets, throws, lap robes; baby blankets, baby bed linens, baby quilts, shams; guest towels, bath towels, hand towels, washcloths and bath sheets," in International Class 24. J.A. 69 (capitalization removed).

The Board evaluated the likelihood of confusion between Opposer's and Applicant's marks using the factors set forth in *In re E.I. DuPont de Nemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973). *See Decision*, 2023 WL 3561719,

---

[2] U.S. Registration No. 3205168, issued on February 6, 2007.

[3] U.S. Registration No. 3012913, issued on November 8, 2005.

at *3–9. Ultimately, the Board determined that "[a]lthough the marks are similar and Opposer's pleaded mark[s] enjoy[] some commercial strength, Opposer has not shown that the goods are related, or that they travel in the same channels of trade to the same classes of consumers, and this failure is dispositive." *Id.* at *9. Accordingly, the Board dismissed the opposition. *Id.*

Opposer timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

Section 2(d) of the Lanham Act prohibits the registration of a mark on the Principal Register if it is "likely, when used on or in connection with the goods of the applicant, to cause confusion" with another registered mark. 15 U.S.C. § 1052(d). "Likelihood of confusion is a question of law based on underlying factual findings regarding the *DuPont* factors." *Spireon, Inc. v. Flex Ltd.*, 71 F.4th 1355, 1362 (Fed. Cir. 2023). "We review the Board's legal conclusions de novo and factual findings for substantial evidence." *Id.* We also accord de novo review to the weight given to each *DuPont* factor. *Swagway, LLC v. ITC*, 934 F.3d 1332, 1338 (Fed. Cir. 2019).

On appeal, Opposer challenges the Board's weighing of the similarity of the marks (*Dupont* factor one) and the Board's factual findings related to: similarity of the goods (*DuPont* factor two); similarity of trade channels (*DuPont* factor three); consumer sophistication (*Dupont* factor four); and strength of Opposer's marks (*Dupont* factor five). We address each challenge in turn.

### I. *DuPont* Factor One

The first *DuPont* factor concerns "[t]he similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression." *DuPont*, 476 F.2d at 1361. The Board found that the marks "are more similar than dissimilar" and determined that

this factor "weighs in favor of a likelihood of confusion finding." *Decision*, 2023 WL 3561719, at *6–7.

Opposer does not challenge the Board's underlying factual findings, but instead challenges the weight accorded to this factor. Relying on *Naterra International v. Bensalem*, 92 F.4th 1113, 1119 (Fed. Cir. 2024), Opposer argues that the Board should have weighed this factor "*heavily*" in favor of a likelihood of confusion. Appellant's Reply Br. 23. In *Naterra*, the Board, in an opposition proceeding, found the relevant marks BABY MAGIC and BABIES' MAGIC TEA "more similar than dissimilar." 92 F.4th at 1119 (citation omitted). The Board in *Naterra* found that "the first two words of [the] BABIES' MAGIC mark and the entirety of [the] BABY MAGIC mark look and sound almost the same and have the same connotation and commercial impression." *Id.* (alterations in original). Due to the similarity of the marks, we determined that "[t]he Board erred in failing to weigh the first *DuPont* factor *heavily* in favor of a likelihood of confusion finding." *Id.* (emphasis added).

Here, the Board likewise found the marks "more similar than dissimilar." *Decision*, 2023 WL 3561719, at *6. The Board noted that the "only difference between Opposer's mark and the literal element of Applicant's mark is that Applicant's mark is spelled with one 'r' while Opposer's is spelled with two," and that this similarity would cause the marks "to be pronounced similarly or identically." *Id.* The Board acknowledged that the marks "will convey different meanings, at least to some Spanish speaking United States consumers," but that this difference is outweighed by the "similarities in appearance and sound." *Id.* at *7. Based on these findings, in view of *Naterra*, we agree with Opposer that the first *DuPont* weighs heavily in favor of a likelihood of confusion.

## II. *DuPont* Factor Two

The second *DuPont* factor considers "[t]he similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use." *DuPont*, 476 F.2d at 1361. When analyzing the similarity of the goods, "it is not necessary that the products of the parties be similar or even competitive to support a finding of likelihood of confusion." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369 (Fed. Cir. 2012) (citation omitted). Rather, "likelihood of confusion can be found 'if the respective products are related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that they emanate from the same source.'" *Id.* (citation omitted). For example, "additional evidence, such as whether a single company sells the goods and services of both parties, if presented, is relevant to a relatedness analysis." *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1267 (Fed. Cir. 2002).

The Board determined that this factor "weigh[s] heavily against finding a likelihood of confusion."[4] *Decision*, 2023 WL 3561719, at *9. Regarding Opposer's registered goods, the Board found that "Opposer has failed to introduce any evidence that the goods are related" to the goods in Applicant's application, "or that they are marketed in a manner that could give rise to the mistaken belief that they emanate from the same source." *Id.* at *8. Separately, the Board noted that Opposer introduced evidence of using its mark for goods not listed in its registrations—bathrobes,

---

[4] The Board addressed similarity of the goods (*DuPont* factor two) and the similarity of trade channels (*DuPont* factor three) together. *See Decision*, 2023 WL 3561719, at *7–9. In this opinion, we address them separately.

scarves, diffusers, and candles—but dismissed this evidence as unproven "common law" usage. *Id.* at *9.

Opposer contends that it introduced evidence of its non-registered goods not to establish common law usage, but instead to show that Applicant and Opposer "sell goods in the same general field or industry" and that the "parties' goods have been shown to be available from one source," namely, Opposer. Appellant's Br. 22–23. Opposer's President and Chief Executive Officer and Opposer's Vice President, Secretary, and General Counsel both testified that Opposer offers scarves for sale, which are expressly listed in Applicant's application, along with other goods similar to those listed in the application, including bathrobes, diffusers, and candles. *See* J.A. 101–02 ¶ 23 (citing J.A. 404–05 (scarves); J.A. 355 (bathrobes); J.A. 460–61 (diffusers and candles)); J.A. 112–13 ¶ 23 (same).

The Board erred by failing to consider that Opposer "sells the goods . . . of both parties," which "is relevant to a relatedness analysis." *Hewlett-Packard*, 281 F.3d at 1267; *see also Recot, Inc. v. Becton*, 214 F.3d 1322, 1328–29 (Fed. Cir. 2000) (holding that the Board erred in declining to consider lay evidence that companies sell the goods of both parties); *Naterra*, 92 F.4th at 1117. On remand, the Board should properly evaluate the evidence that Opposer has introduced in support of its argument that a single company (i.e., Opposer) sells the relevant goods of both parties (i.e., the goods set forth in the application and registrations) in considering whether the relevant consumer could mistakenly believe that the goods emanate from the same source. Furthermore, although none of the goods listed in the application and registrations are identical, the Board should still compare the goods and consider whether they are related. *See Hewlett-Packard*, 281 F.3d at 1267 (holding that the Board must compare the goods and services listed in the relevant application and registrations even without additional evidence).

### III. *DuPont* Factor Three

The third *DuPont* factor considers "[t]he similarity or dissimilarity of established, likely-to-continue trade channels." *DuPont*, 476 F.2d at 1361. We look to the application and registrations to identify the applicable channels of trade. *Bose Corp. v. QSC Audio Prods., Inc.*, 293 F.3d 1367, 1377 (Fed. Cir. 2002). Here, neither the application nor the registrations contain any trade or consumer channel restrictions. *See* J.A. 55–56; J.A. 68–70. We have explained that "[i]n the absence of meaningful limitations in either the application or the cited registrations," it is "presumed that the goods travel through all usual channels of trade and are offered to all normal potential purchasers." *In re i.am.symbolic, llc*, 866 F.3d 1315, 1327 (Fed. Cir. 2017).

Opposer argues that the Board erred in failing to apply this presumption. Appellant's Br. 33. We disagree. The Board recognized the presumption but found that "Opposer [did] not provide[] any evidence regarding the 'normal' channels of trade for Applicant's identified goods in the United States." *Decision*, 2023 WL 3561719, at *8 (citation omitted); *see Inter IKEA Sys. B.V. v. Akea, LLC*, 110 U.S.P.Q.2d (BNA) 1734, 1743 (T.T.A.B. 2014) ("[W]hen the dispute involves the comparison of *different* goods or services, this principle does not help the party asserting a likelihood of confusion unless there is further evidence that would permit a comparison of the normal trade channels for the parties' respective goods or se[r]vices.").

The only evidence Opposer presented regarding the trade channels of Applicant's goods was that Applicant sells its goods in department stores and online outside of the United States. *See* J.A. 102–03 ¶¶ 26, 29. Opposer did not explain, however, how this evidence bears on the normal and usual trade channels for the same goods within the United States. In other words, the Board reasonably concluded that Opposer's trade-channels argument was not adequately developed. *See Johnson & Johnson v. Salve*

*S.A.*, 183 U.S.P.Q. (BNA) 375, 377 (T.T.A.B. 1974) ("[O]pposer-petitioner is advised that the issue of likelihood of confusion is determined on the basis of circumstances surrounding use of involved marks *in the United States*; that is, use in commerce which may lawfully be regulated by Congress."); *Double J of Broward Inc. v. Skalony Sportswear GmbH*, 21 U.S.P.Q.2d (BNA) 1609, 1612 (T.T.A.B. 1991) ("Information concerning applicant's foreign activities . . . is not relevant to the issues in an opposition proceeding.").

Opposer asserts that "[b]oth the Board and this Court recognize that evidence of a party's sales outside of the United States, such as internet sales or retail sales, can be considered *for a likelihood of confusion analysis*." Appellant's Br. 28 (emphasis added). As support, Opposer relies on *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 969 (Fed. Cir. 2007). But *In re Bayer* addressed whether a term was descriptive under Section 2(e)(1) of the Lanham Act, explaining that "[i]nformation originating on foreign websites or in foreign news publications that are accessible to the United States public may be relevant to discern United States consumer impression of a proposed mark." *Id.* We do not agree with Opposer that the narrow use of foreign evidence in *In re Bayer* is relevant to the comparison of trade channels in the United States under Section 2(d).

Accordingly, the Board reasonably found the foreign trade channels evidence, without more, insufficient for establishing the normal and usual trade channels for Applicant's goods in the United States.

## IV. *DuPont* Factor Four

The fourth *DuPont* factor considers "[t]he conditions under which and buyers to whom sales are made, i.e. 'impulse' vs. careful, sophisticated purchasing." *DuPont*, 476 F.2d at 1361. "When products are relatively low-priced and subject to impulse buying, the risk of likelihood of confusion is increased because purchasers of such products are

held to a lesser standard of purchasing care." *Recot*, 214 F.3d at 1329.

The Board determined this factor to be "neutral." *Decision*, 2023 WL 3561719, at *9. The factual findings underlying that determination are supported by substantial evidence. The Board acknowledged that the goods identified in Opposer's registrations "could encompass basic, inexpensive linens, as well as luxury linens." *Id.*

Opposer argues that this factor "weighs in favor of a likelihood of confusion finding." Appellant's Br. 39. Specifically, Opposer claims that the Board "conceded" that the parties share consumers of "basic, inexpensive" goods. *Id.* at 38 (citation omitted). Not so. The Board found that the goods "*could*" encompass basic, inexpensive linens, "*as well as*" luxury linens. *Decision*, 2023 WL 3561719, at *9 (emphases added); *see* J.A. 101–02 ¶ 23; J.A. 112–13 ¶ 23. This finding is reasonable and supports the Board determining factor four to be neutral.

V. *DuPont* Factor Five

The fifth *DuPont* factor considers "[t]he fame of the prior mark (sales, advertising, length of use)." *DuPont*, 476 F.2d at 1361. Fame, for purposes of likelihood of confusion, "varies along a spectrum from very strong to very weak." *Palm Bay Imps. Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1375 (Fed. Cir. 2005) (citation omitted). "Relevant factors include sales, advertising, length of use of the mark, market share, brand awareness, licensing activities, and variety of goods bearing the mark." *Coach Servs.*, 668 F.3d at 1367.

The Board found that Opposer's mark is "commercially somewhat strong," and determined "that this weighs in favor of finding a likelihood of confusion." *Decision*, 2023 WL 3561719, at *6. The factual findings underlying that determination are supported by substantial evidence. The Board noted that "Opposer's confidential sales figures are

significant," and that its "advertising expenses are also high enough that [the Board] would expect Opposer's promotional efforts to have reached an appreciable number of relevant consumers." *Id.* at *5. But the Board observed that it had "no context" for these figures, "such as how the figures . . . compare with that for other brands." *Id.* (citation omitted). Additionally, the Board found that "public exposure to Opposer and its mark via social and traditional media is underwhelming." *Id.* at *6.

Opposer argues that the Board erred in discounting the commercial strength of its marks and should have determined that this factor "weigh[s] *heavily* in favor of a finding of a likelihood of confusion." Appellant's Br. 41 (emphasis added). Specifically, Opposer contends that the Board improperly discounted its sales and advertising figures based on a lack of comparative evidence to "other brands of linens and related products," and that doing so contravened our decision in *Omaha Steaks International, Inc. v. Greater Omaha Packing Co.*, 908 F.3d 1315 (Fed. Cir. 2018). Appellant's Br. 40–41 (quoting *Decision*, 2023 WL 3561719, at *5).

We disagree. In *Omaha Steaks*, we determined that the Board erred in discounting raw sales and advertising data where the opposer provided "considerable contextual evidence" about its marketing efforts—even though it did not provide market share data. 908 F.3d at 1319–21; *see id.* at 1320 ("Market share is but one way of contextualizing ad expenditures or sales figures."). Here, by contrast, Opposer offered no comparable contextual evidence. The Board did not require market share data. Accordingly, the Board appropriately considered Opposer's sales and advertising figures, along with Opposer's underwhelming media presence, and reasonably found that Opposer's marks are "commercially somewhat strong." *Decision*, 2023 WL 3561719, at *5–6.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. In sum, the Board's factual findings underlying the third, fourth, and fifth *Dupont* factors are supported by substantial evidence and therefore will not be disturbed. However, because the Board erred in weighing the first *Dupont* factor and failed to address and evaluate relevant evidence concerning the second *Dupont* factor, we *vacate* the Board's decision and *remand* for further proceedings consistent with this opinion.

**VACATED AND REMANDED**

Costs

Costs to Appellant.